### ALONZO P. WARREN, plaintiff in error *v.* THE PEOPLE, defendants in error.

Keeping a bawdy house was an indictable offence at common law, and a person accused of it was entitled to a trial by jury, that right being secured by the state constitution of 1821; the provision of the Revised Statutes ( 1 *R. S.*, 638, § 1 ), by which keepers of bawdy houses are declared disorderly persons, and subjected to summary punishment, is unconstitutional and void.

The same constitutional provision being retained in the state constitution of 1846, a person arrested and brought before a magistrate has a right to give bail for his appearance before the next grand jury; and where such right was denied, and the defendant subjected to summary conviction before the justice, the conviction was reversed.

CERTIORARI to a justice of the peace. Complaint was made on oath to the justice of the peace that Warren is a disorderly person within the intent and meaning of chapter eighty-six, section fourteen of the Session Laws of 1855, and the Revised Statutes; for, that Warren, on the 12th day of December, 1856, and on divers other days before and since that date, in, &c., did and does keep a bawdy-house, or house for the resort of prostitutes, ·drunkards, tipplers, gamesters and other disorderly persons, and did make a noise and disturbance of the public peace, and did quarrel

Warren *v.* The People.

in view from a public place or street, to wit, at, &c. The justice issued his warrant, reciting in it the complaint. The defendant was arrested and brought before the justice, and pleaded not guilty. The cause was adjourned to the next day, at the instance of the defendant, when the defendant moved to be discharged upon the ground, among others, that the statute referred to is unconstitutional, as it creates a new court, and does not provide for trial by jury. The motion was denied. The defendant then asked to be tried by the next Court of Sessions, or before the justice, as he might elect. He offered to give bail for his appearance at the next Court of Sessions to be held in the county, and he objected to his being placed on trial except by a jury of twelve men; also objected to be tried except by a jury of six men. He objected to the jurisdiction of the justice. Bail was refused and the objections were overruled, and the justice proceeded to the trial. Numerous witnesses were examined. At the close of the evidence by the people, the defendant moved that he be discharged, provided he give sufficient securities for his good behavior for the space of one year, according to the Revised Statutes. The motion was denied, and the justice convicted the defendant of the offence charged, and adjudged and sentenced that he should be imprisoned in the common jail of Niagara county for the term of six months, and pay a fine of fifty dollars, and that he stand committed until the fine be paid.

*A. P. Floyd,* for plaintiff in error.

*A. W. Brazee,* for defendant in error.

*By the Court,* MARVIN, J.—The counsel for the plaintiff in error insists that the law under which the conviction was had is unconstitutional: First. Because it denies the right of trial by jury, in a case in which it has been heretofore used. Second. Because it establishes a new court, which

PAR.—VOL. III.        69

does not proceed according to the course of the common law. Also, that the conviction is void, as the penalties imposed by the Revised Statutes and the act of 1855, are different.

Previous to examining the act of 1855, it will be proper to notice the Revised Statutes, " Of disorderly persons," in which it is declared, among other things, " that all keepers of bawdy-houses, or houses for the resort of prostitutes, drunkards, tipplers, gamesters or other disorderly persons," &c., " shall be deemed disorderly persons." (1 *R. S.*, 638, § 1.) Upon a complaint on oath to a justice of the peace against any person, as being disorderly, the justice is required to issue his warrant, and to cause such person to be brought before him for examination. If it appear that such person is a disorderly person, the justice may require of him sufficient sureties for his good behavior for one year; and in default of such sureties, the justice is to make up, sign and file, in the county clerk's office, a record of the conviction of such offender, as a disorderly person, specifying generally the nature and circumstances of the offence, and by warrant, commit such offender to the common jail, there to remain until such sureties be found, or such offender be discharged according to law.

Two justices may discharge the prisoner from jail upon his giving the sureties required. If not discharged, the Court of General Sessions is to inquire into the circumstances, and may discharge such person from confinement, &c., or may, in its discretion, order such person to be kept in the common jail, for any time not exceeding six months, at hard labor, &c. The provisions of the Revised Statutes are taken mainly from an act passed February 9, 1788. (1 *R. L.*, 114, § 1.) By that act the justice was authorized to commit such disorderly persons to the bridewell or house of correction, for any time not exceeding sixty days, or until the next General Sessions of the peace. The General Ses-

sions had the power to detain and keep such disorderly person for any further time, not exceeding six months.

It is sure, that neither by the Revised Laws nor the Revised Statutes, was any trial by jury given in proceedings against disorderly persons. The whole power was, in the first instance, confided to a justice of the peace, and until the Revised Statutes, he was not authorized to take sureties, except as to persons who, for the most part, supported themselves by gaming. (1 *R. L.*, 154, § 9.)

It is proper to remark that I do not find "keepers of bawdy-houses" mentioned in the statutes relating to disorderly persons, prior to the Revised Statutes. It is clear that the trial by jury was not used prior to the constitution of 1821, or 1846, in cases relating to disorderly persons, as defined by the statute, and reserving the case of the "keepers of bawdy-houses," there can be no question that the legislature has the power to provide for the examination and trial of disorderly persons, without a jury.

Keeping a bawdy-house was, and is, an indictable offence at common law (1 *Russ. on Cr.*, 322), and the person, when indicted for this offence, has a right to be tried by a jury. May the legislature in revising the laws from time to time, or by new statutes, declare that persons doing certain acts, which acts by the common law or by statute are crimes, indictable and punishable as such, disorderly persons, and thus subject them to the summary proceedings and punishment before and by a justice of the peace, or any court, without a jury?

By the statute under which the justice acted, it is provided that, in addition to those persons described in section one, title five, chapter twenty, of the Revised Statutes, all riotous persons, or persons found quarreling or fighting in any alley, street or lane, or in any public place, street, lane or alley in said village, and any person who shall make any indecent exposure of his person in public view, and specifying many other acts, it is declared shall be deemed disor-

derly persons, and that they be proceeded against and punished according to the provisions of the act. (*Laws of* 1855, 129, § 14.) By section sixteen, the justice is authorized to try and determine the complaint or charge, and upon conviction, he has the power and is authorized to punish such offender by fine not exceeding $50, or by imprisonment in the county jail at hard labor or not, for a term not exceeding six months, or both such fine and imprisonment.

It will be noticed that the act does not mention " keepers of bawdy-houses, or houses for the resort of prostitutes, drunkards, tipplers and gamesters, or other disorderly persons." This is the language of the Revised Statutes. The act of 1855 introduces its specification with the language : " In addition to those persons described in section one, &c., of the Revised Statutes, all riotous persons, &c., shall be deemed disorderly persons, and may be proceeded against and punished according to the provisions of this act." *Quere.* Had the justice any power under the act to proceed against and punish any persons except such as are charged with the acts specified in this statute ? Could he apply the provisions of this act, touching trial and punishment, to the cases specified only in the Revised Statutes ? The act says, " When any person charged or complained against as a disorderly person *under the provisions of this act* shall be arrested " the justice may try. Are we to incorporate in the act all the cases specified in the Revised Statutes ? I certainly have great doubt whether the language in this statute is sufficient to bring into the statute all the cases specified in the Revised Statutes as constituting disorderly persons, and thus subject them to a summary trial and punishment by the justice. If not, then the proceeding was under the provisions of the Revised Statutes, as to the charge of keeping a bawdy-house, or house for the resort of prostitutes, &c., and the justice had no right to try and punish the accused under the act of 1855, but he should have

Warren *v.* The People.

required sufficient sureties for his behavior for one year, or, in default, should have committed him to jail, pursuant to the provisions of the Revised Statutes. But I will waive this view of the case, and proceed to inquire whether Warren had the constitutional right to be tried by a jury. The principal charge, and of this he was convicted, was the keeping of a bawdy-house, or house for the resort of prostitutes, &c. As I have already stated, the keeping a bawdy-house was and is an indictable offence at common law, and any person tried for such an offence has always been tried by a jury. I do not find that this offence was ever classed with those constituting disorderly persons prior to the Revised Statutes. At the time the Revised Statutes were enacted, the constitutional provision touching trial by jury was the same as it now is. I am not aware that "keepers of bawdy-houses" have ever been proceeded against as disorderly persons under the Revised Statutes. Certainly, they have never been subjected to trial, fine and imprisonment by a justice of the peace without a jury. Had the legislature the power, when the Revised Statutes were enacted, to declare the keepers of bawdy-houses disorderly persons, and in that way subject them to imprisonment, as provided in the Revised Statutes, without a trial by jury? In my opinion, it had not such power. Keeping a bawdy-house was, at that time, a criminal offence, and indictable at common law as a nuisance. The legislature could not, by classing it with those acts which constituted disorderly persons, withdraw from the person charged with the offence the right which the constitution had secured to him of a trial by jury. As we have seen these were offences that might be summarily tried, and, under certain circumstances, without a jury, prior to the adoption of the constitution either of 1821 or 1846. Now, if the legislature can take any of the well known crimes which had been used theretofore to be tried by a jury, and by classing them with those cases or crimes which could be tried

without a jury, it could entirely destroy the security provided in the constitution.

In *Wood* v. *City of Brooklyn* (14 *Barb.*, 432), Justice Strong says : " This provision relates to classes, and of course includes the individual cases which they comprise. In no other way can constitutional enactments preserve that continued efficacy which is so essential for the public good. Whenever, therefore, a new case is added to a class it becomes subject to its rules." He applied these rules to a newly enacted penalty. He adds : " To allow the legislature to except from the operation of a constitutional provision by direct enactment, a matter clearly falling within its meaning, would sanction a fraud upon its organic law, and might, in the end, destroy its obligation." ( *The People* v. *Berberrick and Toynbee*, 11 *How. Pr. R.*, 336 ; *The People* v. *Kennedy*, 2 *Park. Cr. R.*, 312. ) In the latter case Justice Parker says : " If the accused, in a trial of this grade, had the right to a trial by jury, in the constitutional sense of the word, when the constitution took effect, his right cannot be taken away by a subsequent act of the legislature. It is no answer to say that this offence did not exist at the time the constitution took effect, but has since been enacted by statute. If the offence be such that it could have been entitled to a trial by a jury, if enacted before the constitution was adopted, it cannot be deprived of the same right when enacted afterwards." These remarks were in cases where the crime was enacted since the constitution. They furnish the rule in such cases, viz., that where the legislature vote a new offence it is placed on the same footing as other previous offences of the same grade or class, and is equally governed by the constitution.

The legislature has, as we have seen, from time to time revised the statutes in relation to disorderly persons, and added new cases ; and the legislature may, I have no doubt, continue to do so ; and if the acts which shall be specified as constituting a disorderly person are of a similar charac-

Warren *v.* The People.

ter, grade or class with those previously constituting a disorderly person, the law may provide for proceeding against such persons without a jury, as a trial by jury has not, in such cases, been heretofore used. It will not be difficult, upon an examination of the laws relating to disorderly persons, to discover their general character. (4 *Bl. Com.*, 169, So, also, the Revised Statutes, " Of disorderly persons," excepting as to the keepers of bawdy-houses, and houses for the resort of prostitutes, &c.; jugglers, common showmen, mountebanks, &c., &c. If the keeping of a bawdy-house had not been an indictable offence it is quite probable that it might have been classed by the legislature with those cases constituting disorderly persons, and have been dealt with in the same manner. But the difficulty is that such offence was an indictable crime, and so triable by jury; and when a person is charged with this crime he has a right, by the constitution, to be tried by a jury. The accused offered to give bail, and the justice should have taken it. The accused was deprived of an important constitutional right, and the conviction and sentence must be reversed.