McIlvaine, J.
Are those statutes which define and punish by fine, certain immoral practices, and offenses, malaprohibita, in a summary manner and without trial by jury, in conflict with the constitution of the state ? There are scores of such offenses upon the statute book, and many of them 'have remained there unchallenged since the organization of the state government. The validity of all such statutes is within our present decision.
The plaintiff in error, Herbert Inwood, was arrested and fined, under section 3 of the act of February 17, 1831,,“for the prevention of certain immoral practices ” (Swan and Critch-field, 447), which provides, “that if any person or persons shall, at any time, interrupt or molest any religious society, &c., the person or persons so offending shall be fined in any *187 sum not exceeding twenty dollars. And any judge of the court of common pleas, or justice of the peace within the proper county, be and they are hereby empowered, authorized and required to proceed against and punish every person offending against the provisions of this act; and upon view and hearing may, or on information given under oath or affirmation, shall, if need be, issue his warrant to bring the body of the accused before him, and shall inquire into the' truth of the accusation ; and if guilty shall enforce the penalty of this act annexed to the ofíense; and said offender (if the judge or justice should think necessary) may be detained in custody and committed until sentence be performed.” The arrest wTas made under a warrant issued by a judge of the court of common pleas, and upon- the hearing the accused demanded a trial by jury, which was refused on the ground that the offense was not, under the statute, triable by a jury, whereupon the accused was found guilty by the judge, and fined in the sum of fifteen dollars, and ordered to stand committed until the fine be paid. This judgment is now sought to be reversed, on the ground, that the statute under which the fine was imposed, is unconstitutional, for the reason that it did not provide for a jury trial. .
The provisions of the constitution relied on as nullifying the statute are sections 5 and 10 of article 1. The former provides, “The right of trial by jury shall be inviolate.” It is settled beyond further discussion, that this clause in the constitution was not intended to enlarge or modify the right of trial by jury. Its sole purpose was to guaranty the perpetuity of the institution, as it then existed and as it had long existed at-common law. Work v. State, 2 Ohio St. 296.
The question therefore arises: At the time of the adoption of the constitution in 1851, did the right of trial by jury exist in cases like the present in the state of Ohio, either under its own system of jurisprudence, or by the rules of the common law. The constitution of 1802 contained the identical provision now under consideration, and yet, in Markle v. Akron, 14 Ohio, 14, this court held an ordnance to prohibit, under a money penalty, persons not tavern keepers, from selling *188 intoxicating liquors within the corporate limits to be constitutional, notwithstanding the mayor, without the intervention'of a jury, was authorized to try the case and impose the penalty. The case was appealed to the common pleas, where a declaration in debt was filed, and upon recovery, the cause was reviewed, in error, by this court, where the judgment was affirmed. In the opinion it is said: “It appears to have been urged against a recovery in the court below, that the ordinance under which the plaintiff in error was arrested contemplated a criminal prosecution, and that debt was not the proper remedy. It is true, for offenses strictly criminal or infamous, punishment can only be inflicted through the medium of an indictment or presentment of the grand jury. There are however many offenses made so by statute which are but quasi criminal, and, in which the legislature may direct the mode of redress untrammelled by the constitution; such as sabbath breaking, selling spirituous liquors bn Sunday, and the disturbance of religious meetings. Long acquiescence in these enactments go far to show the construction which has been placed by all on the constitution, and that there may be many offenses which, though decidedly immoral and mischievous in their tendencies, are not crimes, but at most are only quasi criminal. Of such jurisdiction may be given to justices of the peace or the mayor of an incorporated town.” Wightman v. State, 10 Ohio, 452, is to the same effect. These cases clearly show, that at common law, the right to demand a trial by jury in such cases does-not exist, and, also, that the common law rule was not changed by the constitutional provision under consideration. The doctrine of the common law, that fines for such minor offenses could be imposed and collected, without the intervention of a jury, and by magistrates who had no jurisdiction in the trial of jury cases, is abundantly established by many cases and text writers. Indeed, the doctrine is nowhere denied. 3 Blackst. Comm. 161; Swan’s Treatise, Ed. of 1871, p. 678; Sedgwick’s, 491, and note; 3 Park. Cr. 544; 1 Curtis C. C. 311; 45 Ill. 218; 31 Conn. 572; 50 N. Y. 274; 6 Lans. 44; 12 Ohio St. 124; 1 Head(Tenn.) 71; 1 Williams (Vt.) 318, 325.
*189 A more difficult question arises on section 10, above referred to. This section reads : “ Except in cases of impeachment, and cases arising in the army and navy, or in the militia when in actual service in time of war or public danger, and in cases of petit larcency and other inferior offenses, no person shall be held to answer for a capital or other infamous crime, unless on presentment or indictment of a grand jury. In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the accusation against him and to have a copy thereof; to meet the witness face to face and to have compulsory process to procure the attendance of witnesses in his behalf ; and to have a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed.” The question is : "Was the phrase “ in any trial, in any court ” intended to apply to cases like the present, where the penalty is by fine, merely, inflicted on the violator 'of a mere police regulation, only quasi criminal? A class of cases for llie punishment of immoral and pernicious practices by pecuniary penalties, but in which, by the common law, as above shown the accused was never entitled to demand a trial by jury. The provision of the constitution is, that the person accused shall have a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. Accused of an offense — to wit; such an offense as woirld, before the adoption of the constitution, have entitled the accused to a jury trial. This provision, in our opinion, was not intended to extend the right of jury trial, but was intended to define the characteristics of the jury.
In Thomas v. Ashland, 12 Ohio St. 124, it was held, that an ordinance of a village which imposed imprisonment as a penalty for an offense, where no provision was made for a trial by jury, was in conflict with section 10 of the 1st article of the constitution above quoted; but the court was careful to exclude from the operation of the rule there laid down, cases where the punishment was by fine only, although imprisonment was authorized as a means of enforcing the payment of the fine. We think the discrimination between imprisonment as *190 part of the penalty, and as a means of enforcing the penalty, is well made. Hence, we find no constitutional objection to the statute under which Inwood was arrested.

Judgment affirmed.