## LETITIA KNIGHT *vs.* JOSEPH B. CAMPBELL.

The power of the legislature is general and unlimited, as to all subjects of legislation ; except in the cases where it has been abridged by the constitution of the State, or of the United States.

Hence its power to enlarge the jurisdiction of justices' courts is unquestionable; unless the power is restricted by some constitutional limitation upon it.

The amendment of section 53 of the Code, in 1861, by extending the jurisdiction of justices of the peace to actions of replevin, is not void as violating the provision of the constitution which declares that "the trial by jury, in all cases in which it has been heretofore used, shall remain inviolate forever," (*art.* 1, § 2,) by reason of the circumstance that it transfers a class of cases from courts of record, where juries are composed of twelve men, to justices' courts in which they consist of six, only. MULLIN, P. J., dissented.

That provision in the constitution has no reference to the power of the legislature to alter and increase the jurisdiction of justices' courts, and was not intended to, and did not, operate as a limitation upon such power, in that regard.

Knight *v.* Campbell.

The circumstance that although all three of our State constitutions have contained similar provisions to that contained in article 1, section 2, of the constitution of 1846, it has been the common practice for the legislatures, under each and all, to exercise the power of altering and enlarging the jurisdiction of these inferior tribunals, and authorizing them to try actions, and classes, or kinds of action, with a jury of six men, which before were triable only in a court of record, by a jury of twelve men—showing a general acquiescence in the exercise of the power for so long a period—is one of great weight, in favor of its constitutionality; and one which ought to be conclusive, as to the true construction and meaning of such constitutional provision. *Per* JOHNSON, J.

The constitution, in guarantying the right of "trial by jury as it has been heretofore used," intended to embrace juries in justices' courts, as they existed, and had been used, before the constitution was adopted.

The word "jury," as used in the constitution, does not mean a jury of twelve men, exclusively. A jury of six men, in a justice's court, is as much a jury, in the eye of the law, as a jury of twelve men, in a court of record; and is the jury which had been "heretofore used" in that tribunal, at the adoption of the constitution.

The decision in *Dawson* v. *Horan*, (51 *Barb.* 459,) approved and followed.

The case of *The People* v. *Toynbee*, (13 *N. Y.* 378,) commented on and distinguished.

APPEAL from a decision of the county court of Monroe county, affirming a judgment of a justice's court.

The action was commenced in a justice's court, to recover the possession of personal property, alleged in the complaint, to be of the value of $40. The defendant appeared and answered, denying the complaint, and alleging that the property was the property of one George Knight. Issue being thus joined, the defendant demanded a trial by a jury of twelve men. The justice decided that he would summon twelve men from whom a jury of six men should be drawn to try the issue. The defendant declined to accept of a jury of six men to try the cause, on the ground that the constitution guarantied the right to have the issue tried by a jury of twelve, and moved to dismiss the action because it could not be so tried. The justice refused to dismiss, and the defendant making no further defense, the plaintiff proceeded to trial before the justice, and obtained a judgment for the delivery of the possession

of the property, the value of which was assessed by the justice at $32.45. From this judgment the defendant appealed to the county court of Monroe county, where the judgment of the justice was affirmed. The county judge declined to express any opinion upon the question as to the constitutionality of the law conferring jurisdiction upon justices' courts, of actions of replevin.

From the judgment of affirmance the defendant appealed to this court.

*Hiram L. Barker*, for the appellant.

I. The justice lost jurisdiction of the action when the defendant demanded a trial by a jury of twelve men. The number of men composing a jury in a justice's court cannot exceed six. (2 *R. S.* 242, 243.) This action for the claim and delivery of personal property, is a substitute for the action of replevin before the Code. (*Nichols* v. *Michael*, 23 *N. Y.* 268. *Rockwell* v. *Saunders*, 19 *Barb.* 481.) Courts of record only, with common law juries, had jurisdiction in replevin actions, at and before the adoption of the constitution in 1846. Power to try such actions was not given to justices' courts till 1860. (*Code*, § 53.) The constitution (art. 1, § 2) provides that "the trial by jury, in all cases in which it has been heretofore used, shall remain inviolate forever." The word "jury," in that clause of the constitution, means a jury of twelve men. (*Wynehamer* v. *The People*, 13 *N. Y.* 427, 458. *Cruger* v. *Hudson River R. R. Co.*, 12 *N. Y.* 198.) The defendant, therefore, in all replevin actions, being entitled to a trial by a jury of twelve men, before the adoption of the constitution in 1846, the same right remains to him now in all actions for the claim and delivery of personal property, and the justice should have dismissed the action when a trial by such a jury was demanded. (*Baxter* v. *Putney*, 37 *Howard*, 140. *Dater* v. *Loomis, Gen. Term, 5th District,* opin. by *Mullin, J., not reported.*)

Knight *v.* Campbell.

II. If it shall be decided that the defendant, in an action for the claim and delivery of personal property, must submit to a trial either without a jury, or with a jury of less than twelve men, that section of the constitution which guarantees the right of trial by jury in all cases in which it had theretofore been used, becomes practically of no effect. The result of such a decision would be to give power to the legislature, in its discretion, to abolish the trial by jury, in any class of cases, by merely increasing the jurisdiction of justices' courts so as to include such cases. The number of men composing a jury in that court being regulated by statute, the legislature might reduce the number to four, or even two, and it might possibly abolish jury trial entirely in that court, (there being no constitutional provision in respect to juries of six men,) thus by merely changing the action from a court of record to an inferior court, with such enlarged jurisdiction, it could in its discretion deprive a party of his rights in any class of cases, regardless of the constitutional restrictions. It is submitted that this section of the constitution cannot be construed so as to give to the legislature this discretionary power. (*Albany Law Jour. vol.* 3, *pp.* 283 *to* 296.)

III. If the jurisdiction of justices' courts is enlarged, so as to include any new class of cases, power must be given them by statute to impannel a common law jury, if it shall be duly demanded; or a party must have a right to remove the action to another court, where he can have a trial by such a jury. The Code provides that in ordinary actions in justices' courts, when the amount for which judgment is demanded in the pleadings shall exceed fifty dollars, and in actions like the one at bar, when the value of the property as assessed, together with the damages, shall exceed that sum, an appeal may be taken from a judgment rendered therein, to the county court, and a new trial had by a jury of twelve men. In such cases, after issue is joined before the justice, the defendant has

only to allow judgment to be taken against him, and then by giving an undertaking, can remove the cause for trial to the county court. This requirement may not, perhaps, be considered such a clog upon his constitutional right to trial by jury as to be in violation of it. But in the case at bar, the assessed value of the property being less than fifty dollars, and no damages awarded, no provision has been made by law by which the defendant could, in any court, or in any manner, have such a trial by jury as the constitution entitles him to.

*C. Jordan*, for the respondent.

I. The justice acquired jurisdiction in this case by virtue of subdivision 10 of section 53 of the Code, and such provision is not in violation of section 2 of article 1 of the constitution. (*Albany Law Jour. vol. 2, p.* 263.)

II. A statute increasing the civil jurisdiction of justices' courts is not obnoxious to the provision of the constitution, by reason of the circumstance that it transfers a class of cases from courts of record, where juries are composed of twelve men, to justices court, where they are composed of six. (*Dawson* v. *Horan*, 51 *Barb.* 459.)

III. The provision of the constitution securing the trial by jury in all cases in which it has heretofore been used, does not prevent the legislature from authorizing trials to be had otherwise than by a common law jury, in civil courts of local jurisdiction. (*Board of Health* v. *Lane*, 6 *Abb., N. S.*, 106. *Crouse* v. *Walrath*, 41 *How.* 86. *Albany Law Jour. vol.* 2, *p.* 263.)

JOHNSON, J. The decision of the county court and of the justice were in accordance with the decision of this court, at general term in the seventh judicial district, in the case of *Dawson* v. *Horan*, (51 *Barb.* 459,) and was correct, unless that decision is to be overruled as contrary to law. The same question was raised in that case as in this,

Knight *v.* Campbell.

that the legislature has no power, by enlarging the juris-
diction of a justice, to deprive the defendant of the right
to have his cause tried by a jury of twelve men.   That was
an action to recover the value of labor and services, under
the act of 1861, increasing the jurisdiction of justices of
the peace to $200, and the plaintiff recovered $200 besides
his costs.   The argument was there, as here, that the pro-
vision of the constitution, (art. 1, § 2,) that "the trial by
jury in all cases in which it has been heretofore used
shall remain inviolate forever," guarantied to every per-
son the right to a trial by a jury of twelve men, in every
case in which a jury of twelve men had previously been
used, and operated as a limitation upon the power of the
legislature to enlarge the jurisdiction of justices' courts
beyond its boundaries at the adoption of the constitution,
because, there, trials are by a jury of six men only.

It will be seen that the questions in each case are iden-
tical.   The court, in that case, held that this provision of
the constitution had no reference to the power of the leg-
islature to alter and increase the jurisdiction of justices'
courts, and was not intended to, and did not, operate as a
limitation upon such power in that regard.   I have no
doubt, whatever, that the decision was correct, and should
be decisive of this case.

But as this question seems to have been several times
raised, recently, in actions before justices, to recover the
possession of personal property, notwithstanding the de-
cision in *Dawson* v. *Horan, (supra,)* on which conflicting
decisions in county courts have been made; one county
court at least having taken the responsibility of deciding,
in a reported case, *(Baxter* v. *Putney,* 37 *How. Pr.* 140,)
that the act in question here is unconstitutional and void; it
may not be amiss to give the question a more full and crit-
ical examination than it seems heretofore to have received,
for the purpose of having the question finally settled, if a

final settlement of any question is practicable under our judicial system.

The question in regard to civil actions in justices' courts, now presented, is quite a new one, having been, so far as I am advised, first raised in *Dawson* v. *Horan.* In our whole judicial history, from the beginning, no trace of any such question having been raised for adjudication is to be found. All three of our State constitutions have contained similar provisions to the one in question, in our present constitution, and yet nothing has been more common than for the legislature, under each and all, to exercise the power of altering and enlarging the jurisdiction of these inferior tribunals, and authorizing them to try actions, and classes or kinds of action, with a jury of six men, which before were triable only in a court of record by a jury of twelve men. This fact alone—of general acquiescence in the exercise of this power for so long a period—is one of great weight in favor of its constitutionality, and one which ought to be conclusive at this day, as to the true construction and meaning of this constitutional provision in this regard.

The constitution of 1821 had the same provision, in the same identical terms. The first constitution of 1777 had also a provision to the same purport and effect in these words: "That trial by jury, in all cases in which it hath heretofore been used in the colony of New York, shall be established and remain inviolate forever." The changes made by the legislature under each of these constitutions, in the power and jurisdiction of justices' courts, have been neither few nor insignificant, as a brief reference to several of them will show.

At the adoption of the first constitution, in 1777, courts of justices of the peace having jurisdiction in civil actions to a limited amount, were a part of the judicial system of the colony of New York for the administration of justice. They had been long established, and their jurisdiction

Knight *v.* Campbell.

regulated by statute. The first legislative enactment I have been able to examine on the subject, was passed December 16th, 1737. (*Laws of New York from* 1691 *to* 1773, *inclusive, chap.* 656.) By this act jurisdiction was conferred upon justices' courts in "all actions, cases, and causes, of debt, detinue, trespass and replevin, wherein the thing or sum demanded for cause of action, shall be of the value of forty shillings, or under." By this act the right to a trial by a jury of six men was given to either party. In 1772 another act was passed, giving justices' courts jurisdiction in the same class of actions, specifying debt, trespass, trespass on the case, and replevin where the sum or thing demanded did not exceed five pounds. (*Chap.* 1532, *of laws above cited.*) This act also gave either party the right to a trial by a jury of six men, and made provision for the summoning of not more than eighteen, nor less than twelve, being "freeholders or freemen," from which the six jurors were to be drawn, to try the cause. This act was in force at the adoption of the constitution of 1777. Very soon after the adoption of the first constitution containing the provision now insisted upon as a limitation upon legislative power in respect to the jurisdiction of justices' courts, and in 1780 the legislature passed an act enlarging such jurisdiction to one hundred pounds. (1 *Jones & Varick*, 54, 61.) Two years later, in 1782, another act was passed reducing this jurisdiction to ten pounds, or fifty dollars. (1 *id.* 80.)

In 1787 another act was passed in regard to justices' courts, (1 *Greenl.* 445, *ch.* 89;) and in 1813 another, in both of which jurisdiction was fixed at twenty-five dollars, and in both the action of detinue is among the causes of action which such courts were authorized to try, and in both the jury was to be a jury of six men. This remained until 1818, when an act was passed increasing the jurisdiction of these courts to fifty dollars, in the same class of actions, including detinue. By this act the jury was to be

Knight *v.* Campbell.

a jury of six men, except in cases where the sum or balance due, or thing demanded, exceeded twenty-five dollars; in which case either party might demand and have a trial by a jury of twelve men, to be drawn from the number of twenty to be summoned. This act was in force at the adoption of the constitution of 1821, and remained in force up to the revision of our statutes in 1830, its provisions in regard to kinds of actions, amount, and number of jury, not having been essentially altered by the act of 1824. By the Revised Statutes the action of detinue was abolished, and justices' courts from that time ceased to have jurisdiction in actions to recover the possession of personal property, until it was restored by the act in question. The number of the jury, by the Revised Statutes, was reduced to six men, in all cases, and has so remained ever since. The revisers, in their notes, recommending this change, say that "the utility of the existing difference in the number of jurors, in the cases where the demand is under twenty-five dollars, and where it exceeds that amount, is not perceived." (*Revisers' Notes*, 3 *R. S.* 686, *2d ed.*)

It did not occur to the revisers, nor to the legislature which adopted the amendment, that there was any question involved, other than that of fitness and expediency. Ever since the adoption of the Revised Statutes, the regular lawful jury for justices' courts, in all cases, has been six men, and no more. In 1840, under the constitution of 1821, the jurisdiction of justices' courts was further enlarged to $100. The extension of their jurisdiction under the present constitution, is too well known to need more particular notice. We have then, through our whole history as a State, these repeated and material changes and enlargements of the jurisdiction of justices of the peace in civil actions, under three constitutions, containing substantially the same provision, and through several generations of legislators, revisers of statutes, judges and law-

Knight *v.* Campbell.

yers, and framers of constitutions, and no one amongst them all, eminent as many of them were, ever suspected that any provision of the constitution had been thereby invaded, least of all, that any one had been thereby deprived of the right of trial by jury, in defiance of the constitutional guaranty.

I have been particular to notice that from the beginning, justices' courts had jurisdiction of actions to recover the possession of personal property, up to 1830, when the action of detinue was abolished; because it has been suggested that actions of that class were things unheard of before, in a justice's court; whereas the general fact is quite the other way. Replevin, whether in the *cepit* or in the *detinet*, was to remedy a class of wrongs of which a justice's court has always had jurisdiction.

The great point contended for, is that this provision of the constitution means the old common law petit jury of twelve men, and nothing else. The provision does not say this in terms, and constitutions, like all other laws, must be interpreted by the language used. What it says is, "trial by jury as it has been heretofore used." A jury of six men in a justice's court is as much a jury, in the eye of the law, as a jury of twelve men in a court of record. The law has made it the jury for that tribunal, and it is a jury there, to all intents and purposes. It is the jury which has been "heretofore used" in that tribunal. It was so at the adoption of the first constitution under the colonial laws. And the constitution of 1777, when it speaks of the trial by jury "as it has been heretofore used in the colony of New York," must, as it seems to me, have intended to secure the right of trial by jury in justices' courts, as it had been theretofore used in the colony, as well as in any other court. Certainly the language is broad enough to include all trials in all courts, and it should be so construed, unless there is something to give it a special or exceptional application. As has been

already remarked, before, and at, the adoption of the first constitution, justices' courts were a well known and established part of the judicial system. They were part and parcel of the machinery of government for the administration of the law. Doubtless it was true then, as it is now, that more than three-fourths in number, of all actions, tried and determined between parties in the community, are tried and determined in these tribunals of limited jurisdiction. It would, I think, be quite safe to say, that the aggregate amount of claims litigated, and of judgments rendered, in every county in the State, is by far greater in these numerous town courts, than in all other courts of every description, held in such counties. It is scarcely possible, and quite improbable, that this provision of the constitution was not intended to embrace juries in justices' courts as they existed, and had been used before the constitution was adopted. They certainly had been " heretofore used."

Suppose the legislature should now undertake to abolish, by statute, juries in justices' courts, and provide that all cases in which a justice had jurisdiction should be tried by the justice without any jury whatever. It would then, I think, be seen plainly enough, that this provision of the constitution had been violated in that direction. It would be quite unreasonable to suppose that the framers of either of our constitutions, or the people by whom they were adopted, intended that juries in justices' courts were to be, or indeed could be, the common law petit jury of twelve men used in courts of record. All knew that they were not common law courts, but were creatures of the statute, with such powers and faculties, only, as the legislature, by which they were created, saw fit to bestow. The juries belonging to these courts were, therefore, necessarily creations of the statute, and nothing more. When, under the statute of 1818, and 1824, a certain class of causes were tried in these courts by a jury of twelve men,

Knight *v.* Campbell.

it was no more the common law petit jury than the jury of six men, by which other causes were tried in the same court. Each was a statute jury, and neither had any resemblance to the common law jury, except that one corresponded in number with that jury. In this view there is no infringement of the right of trial by jury in enlarging the jurisdiction of justices' courts. On the other hand, if this provision of the constitution is to be held to mean the common law petit jury, it must also be held to mean such a jury for common law courts, in which such a jury had been used before the adoption of the constitution. The true and proper definition of the words " in all cases," in which it has been heretofore used, is not confined to the kinds of action, or the amounts claimed to be due therein, but is much broader, and means in all the conditions and circumstances in which it had been theretofore used, including the tribunals and machinery of litigation in which it had been so used.

The argument in behalf of the appellant is, that by force of this provision every action, and cause of action, which, by reason of the amount in controversy, or otherwise, could be tried in a common law court, and by a common law jury only, at the adoption of the constitution, must remain triable in that tribunal as long as the constitution stands, and cannot be transferred to another court where a different jury is used to any extent, or in any degree. The practical construction, as we have seen adopted and acted upon, and universally acquiesced in, has been to the contrary for nearly a century, and under every constitution, each of which has contained this same provision.

The question is undoubtedly as to the power of the legislature to enlarge the jurisdiction of justices' courts, and nothing more nor less. No one, I suppose, doubts the power of the legislature in this respect, unless its power is restricted in the premises by some constitutional

limitation upon it. Its power is general, and unlimited as to all subjects of legislation, except in the cases where it has been abridged by the constitution of the State, or of the United States. But even if some express grant of power in the constitution were needed to enable the legislature to do what it has undertaken to do, by the act in question, it will be found in section 5, article 6, of the constitution of 1846, which was in force when the statute in question was passed, and which declares that " the legislature shall have the same powers to alter and regulate the jurisdiction and proceedings in law and equity as they have heretofore possessed. When it is seen that previous to the adoption of the constitution of 1846, the legislature had long been in the practice of exercising the very power which was exercised in passing the act in question, and were admitted by universal consent and acquiescence to possess it, this provision of the constitution is quite conclusive upon the question. Just what has been done by the act in question, is " to alter and regulate the jurisdiction and proceedings in law," and that in the same manner, and upon the same principle, and by the exercise of the same power which the legislature was deemed to possess. As this same power had always, up to the adoption of the constitution of 1846, been exercised by the legislature unchalleged, the presumption is that the framers of that constitution, and the electors by whom it was adopted, understood that it was one of the powers included in this section 5. The old and well established rule for the interpretation of statutes applies with equal force to written constitutions, that " great regard ought, in construing a statute, to be paid to the construction which the sages of law who lived about the time, or soon after it was made, put upon it; because they were best able to judge of the intention of the makers." (*Bac. Abr. Statutes*, I, 5.) " It is moreover a maxim, that *contemporanea expositio est fortissima in lege. (Id.)*

Knight *v.* Campbell.

The appellant's counsel also contends that the question here presented was decided in accordance with his position by the Court of Appeals, in the case of *The People* v. *Toynbee*, (13 *N. Y.* 378.) The decision in that case has no application to the question here presented. That was a criminal proceeding, where the defendant, when brought before the magistrate, offered to give bail to appear before the next court having criminal jurisdiction, according to the provisions of the Revised Statutes, in such cases provided. The magistrate refused to take bail, but proceeded to try the defendant, as a court of special sessions, and convict him, under the provisions of the act of 1855, for the prevention of intemperance; the result of which conviction was to subject his property to confiscation and destruction, under the provisions of the act. The question was decided by the Court of Appeals mainly upon the ground that at and before the adoption of the constitution of 1846, offenses of that class, for a violation of the excise laws, were not triable at all, by courts of special sessions, but only in courts of general sessions or of oyer and terminer, where proceedings were according to the course of the common law. Courts of special sessions had no jurisdiction whatever, in such cases, not even a qualified or conditional jurisdiction as in many other classes of misdemeanors. (*See opinions in case.* A. S. JOHNSON, J., *p.* 426, *and* DENIO, Ch. J., *p.* 459.) It was also remarked by these and some of the other judges, that at the adoption of the constitution, under which the act was passed, courts of special sessions had no absolute and unconditional jurisdiction in any case, but that in every case of misdemeanor, a party brought before a magistrate had the unqualified right, if he chose to exercise it, to give bail for his appearance at the next court having criminal jurisdiction, and have his case there tried, according to the course of the common law, by a common law jury. It cannot be doubted that had courts of special sessions, at the adoption of the

constitution of 1846, with a jury of six men, had the same
absolute and unqualified jurisdiction to try offenses of the
grade of misdemeanor, that justices' courts have always
had in civil actions since their first organization, the ques-
tion would have been decided the other way, if indeed it
could have arisen.    In that case, the trial by jury, as it had
theretofore been used, would have remained inviolate.    It
will thus be seen, as has been before remarked, that the
decision referred to has no application to the question pre-
sented in this case, as the two cases are in no. respect
parallel.    There should be no straining, by construction,
to bring this statute into conflict with the constitution,
especially as there is no mischief to be remedied by its
abrogation.    It affords to parties a cheap and speedy rem-
edy to recover possession of their property, wrongfully
taken or withheld, the value of which is of a compar-
atively small amount, at home, without .encountering the
far greater expense, delay, and inconvenience attending
the trial of actions in courts of record.    No one pretends,
or can argue with any show of reason, that a justice of the
peace is not just as competent to try and decide the ques-
tion as to which party is legally entitled to the possession
of personal property of limited value, as he is to try and
decide the question of title and value.    Indeed the right
to the possession of the chattel, generally, if not always,
entered into, and had to be determined in, justices courts, in
actions of trover and trespass *de bonis asportatis.*    No good
reason is or can be shown why the justice should not have
the power to try the one question as well as the other.
Certainly there is no constitutional difficulty in the way,
which would allow one and exclude the other.    Something
has been said, in one of the cases of this kind now before
us, in regard to waiving the objection to the right of the
magistrate to try the cause with a jury of six men, or
without a jury, by the defendant appearing and joining
issue in the action, before demanding to have the case

Knight *v.* Campbell.

tried by a jury of twelve men, or making any objection to the right of the justice to proceed. There is nothing in this suggestion. If the magistrate had not jurisdiction by law, no consent or acquiescence could confer it, and the objection of the want of it may be raised in any stage of the action, wherever it may be carried, by appeal or otherwise. This is well settled. On the other hand, if the statute is valid, it gives jurisdiction to the magistrate, to proceed and try the action, in the form and manner prescribed by law for the trial of actions in his court, and no demand by the defendant to have the action tried in a different manner, and one in which the justice could not by law proceed, could oust the justice of his jurisdiction, or affect in any way his right to proceed and try and determine such action. There is no such thing as ousting a magistrate of jurisdiction, in a case where it is conferred upon him by law, except in those cases where the statute has provided for it by the interposition of a plea of title or otherwise. As to the power of the legislature to confer this jurisdiction, I entertain no doubt whatever. But should it be held that the right of the legislature to exercise it in the beginning was doubtful, it would be asking quite too much of courts, at this late day, to declare that such power was forbidden in the constitution by implication, and thus unsettle all the rights which have been acquired under the various statutes of the same character, for so long a period. Such a decision would justly be regarded as a great public calamity, opening in reality a Pandora's box, in every community in the State, without a single advantage to any one; and it ought not to be made, except upon the clearest and most undoubting conviction of its justice and necessity. I am of the opinion, therefore, that the judgment of the county court was right and should be affirmed.

TALCOTT, J., concurred.

MULLIN, P. J., (dissenting.)(*a*)    The ground on which the appellant sought to reverse the judgment of the justice is, that the action is what was known at common law as an action of replevin, and that such an action, prior to the adoption of the constitution of 1846, was triable only in a court of record, by a jury of twelve men; and that as section 2 of article 1 of the constitution, declares that "trial by jury, *in all cases in which it has been heretofore used, shall remain inviolate forever*," it was not within the power of the legislature to deprive parties in such actions of the right to a trial by a jury of twelve men duly summoned and impanneled to try such actions.

The first question for consideration is, whether the proceeding designated in the Code of Procedure as a claim for the delivery of personal property of which justices of the peace have jurisdiction, is what was known at the time of the adoption of the constitution of 1846, as an action of replevin.

The Revised Statutes abolished the action of detinue, and the action of replevin was extended to cases in which detinue had theretofore been the appropriate remedy. The claim and delivery provided for in the Code could not have been a substitute for detinue, or any other form of action other than replevin, as it was the only action known to the law for the capture and return to the claimant of property illegally taken or illegally detained.

The modes of procedure in the action of replevin, and in that of claim and delivery, are substantially the same, so that, although the names and forms of actions have been abolished, and the mode of procedure somewhat changed, the action given by the Code is in form and effect an action of replevin, of which, at the adoption of the present constitution, a court of record, only, had jurisdiction. It is therefore one of the cases in which a jury trial had there-

(*a*) There were two cases involving precisely the same question; but the judgments appealed from were different. This opinion applies to both cases.

Knight *v.* Campbell.

tofore, (that is, prior to the adoption of the constitution of 1846,) been used.

Jurisdiction over actions for the claim and delivery of personal property was not conferred on justices of the peace until 1860.

If the clause of the constitution above cited secured to parties in actions of replevin a trial by a jury of twelve men, parties to actions for the claim and delivery of personal property are entitled also to a jury of the same number. The question then is, does the clause of the constitution under consideration secure to parties to actions which were triable, at its adoption, by a jury of twelve men, a trial by a jury of that number?

Before attempting to construe the clause of the constitution that secures to the citizen the right of a trial by jury, it is necessary to ascertain the meaning of the word "jury," as used by the framers of the constitution. The word has been in use for centuries, and its meaning as well understood as any in the language. In its broadest sense, it meant a body of men impanneled to determine some question of fact; and in this sense embraces the grand assizes and coroner's jury, as well as the petit jury. Each of them was required to be composed of a definite number of men, so that the name of the jury indicated the number of which it should be composed. The term petit jury, always used in the trial of issues in civil and criminal cases, meant a jury of twelve men, and never of a greater or less number in criminal cases; but in civil cases, the parties might agree upon a different number.

*Bouvier,* in his *Law Dictionary,* title *Jury,* says, that the word "jury," without addition or prefix, imports a body of twelve men in a court of justice, is as well settled as any proposition can be. Bacon, J., in *Clark* v. *The City of Utica,* (18 *Barb.* 451,) says: "When a word, by common usage, has acquired a popular signification, it shall be understood in that sense, unless its meaning is controlled by the con-

text in which it is found, or the circumstances under which it is used." When, therefore, the constitution speaks of a jury, what do we obviously and naturally understand by the language? Precisely what the word imported, and for many years anterior it had been both legally and popularly understood to mean.

In *The People* v. *Kennedy*, (2 *Park. Cr. Rep.* 312 *to* 317,) Parker, J., in answer to the inquiry, what is meant by the expression "*trial by jury*," says: "Does it mean a common law jury of twelve men or a jury of six men, as provided in a trial at the special sessions? I think there can be no doubt on that point. If the legislature may reduce a jury in number to six men, they have the same right to reduce it to one, and thus make a jury of one a compliance with the requirement of the constitution."

It is said in 2 *Kent's Com.* 13, *note b*, that the phrase in the constitution, "the judgment of his peers," means a trial by a jury of twelve men, according to the course of the common law. (*See also*, 4 *Ohio*, 177; 2 *Wisconsin*, 22; 2 *id.* 219.)

The word jury must have the same meaning when used in the constitution that it has when used in a statute, unless there is something in the nature of the clause, or in the context, showing that it is used in a different sense. The seventh section of the first article of the constitution provides that when private property shall be taken for public use, the compensation to be made therefor shall be ascertained by a jury, or by not less than three commissioners appointed by a court of record.

The charter of the Hudson River Railroad Company provided for drawing from the grand jury box the names of twelve persons to serve as a jury of appraisers, to appraise the damages of persons whose lands were taken for the construction of the road. The appraisal was required to be signed by a majority of the said jurors. The Court of Appeals, in *Cruger* v. *The Hudson River R. R. Co.*,

Knight *v.* Campbell.

(2 *Kern.* 190,) held the provision of the charter, as to the appraisal of damages, constitutional, notwithstanding it does not require the whole number to concur in the appraisal, solely on the ground that in several acts passed before the adoption of the constitution of 1846, juries consisting of less than twelve men, and appraisals by less than the whole number of jurors drawn had been passed, and hence the court inferred that the second section of the first article of the constitution must be held to permit the appraisal of damages by such juries.

JOHNSON, J., says: "If that term 'jury,' had not acquired a peculiar meaning, when applied to this class of cases, by prior legislative usage, and had not been continually in use in that special sense up to the time of the convention by which the constitution was formed, I should, without any doubt resting on my mind, be of opinion that the peculiar tribunal provided by this act was not a jury." That term, when spoken of in connection with trial by jury in the second section of the same article, imports a jury of twelve men, whose verdict is to be unanimous.

The reasons why the number of the petit jury is twelve, are thus quaintly given by Giles Duncomb of the Inner Temple, in a book entitled *"Trials by Pais,* or the law of England concerning juries by *nisi prius,"* &c. printed in Dublin in 1793, and are as probable as any. They are such as would be likely to have been controlling at the time of the introduction of the jury system, and why the number of twelve should have been adhered to with such unwavering tenacity. At page 93, he says: "Now for the quales, and then you see the number must be twelve, by the common law. For quality, (*liberos and legales homines,*) and first of their number, twelve, and this number is no less esteemed by our own law than by holy writ. If the twelve apostles, on their twelve thrones must try us in our eternal state, good reason hath the law to appoint the number of twelve to try us in our temporal. The tribes of Israel were

twelve, the patriarch's were twelve, and Solomon's officers were twelve.

Therefore, not only matters of fact were tried by twelve, but in ancient time twelve judges were to try matters of law in the exchequer chamber, and there were twelve counsellors of State for matters of State, and he that wageth his law must have twelve others with him who believe he says true. And the law is so precise in this number of twelve, that if the trial be by more or less, it is a mistrial."

So tenaciously has the jury of twelve men been adhered to, that the Court of Appeals, in the case of *Cancemi* v. *The People*, (18 *N. Y.* 128, 136,) reversed the conviction of the plaintiff in error by a jury of eleven men, by which number the prisoner consented, in open court, to be tried. It was held that he could not waive a trial by a jury of twelve men.

If the word jury means a jury of twelve men, the section of the constitution now under consideration must be construed as if it read, "the trial by a jury of twelve men in all cases in which it has been heretofore used, shall remain inviolate forever." If the section was thus worded, no one would claim that the legislature could reduce or increase the number. That that word was used in this sense by the framers of the constitution, and that such is the meaning given to it by the courts, is, it seems to me, conclusively established. If the framers of the constitution had been of the opinion that a jury might consist of any number the legislature should prescribe, why were damages required to be appraised when land was taken for public use, by a jury or three commissioners? Why were not the three commissioners called a jury? I am not aware that any judge or court has ever suggested a doubt as to the meaning of the word "cases," used in the second section. It is synonymous with "actions and proceedings." It embraces both civil and criminal proceedings.

Knight *v.* Campbell.

If the authorities I have cited, and the reasons that I have given, establish the meaning of the words "jury" and "cases" to be what I claim it to be, it logically follows that under the second section of the first article of the constitution the right of trial by a jury of twelve men is guarantied to parties to actions of replevin, as at the time of the adoption of the constitution, that class of actions were triable only in a court of record, by such a jury.

If there was any doubt remaining, as to the construction to be given to the constitutional provision, it is removed by the decision of the Court of Appeals, in *Toynbee* v. *The People*, (3 *Kern.* 378:) The facts in that case are as follows : Section 5 of the law known as the prohibitory law, authorized justices of the peace to issue process and to hear and determine charges, and to punish for all offenses arising under said act; and they were authorized to hold courts of special sessions for the trial of such offenses; and they were to proceed and try as soon as practicable. At the time of joining issue, but at no other time, either party might demand a trial by jury. If one was demanded, the justice was required to issue a venire, to summon twelve men to serve as jurors, and from them a jury of six were to be impanneled. Toynbee was arrested for selling liquor without license, in the city of Brooklyn, and taken before a justice. He then offered bail for his appearance at the next court of criminal jurisdiction in said county. Bail was refused, and he was required to plead to the complaint, which he did, and thereupon the justice proceeded to the trial, and found him guilty of the offense charged, and fined him $50. The defendant appealed to the general term in the second district, and that court reversed the judgment. The Court of Appeals affirmed the judgment of the general term, six judges voting for affirmance, and two against it. JOHNSON, J., referring to the fifth section of the act under which Toynbee was arrested, says this act provides that offenses prosecuted personally against the

offender, and for which he is punishable by fine, by for-
feiture, and sometimes by imprisonment, shall be tried by
any one of numerous inferior magistrates, either without
a jury at all or by a jury of six men, with very peculiar
qualifications. This is not what the constitution means
by a jury trial. That must be, within the terms of the
constitution, a jury of twelve men.

Hubbard, J., says that it was error for the justice to
refuse to receive bail. "I am well satisfied that the de-
fendant had a constitutional right to be tried by a common
law jury of twelve men, and to that end he should have
been permitted to give bail to appear before a tribunal
where such a jury could be obtained."

Mitchell, J., citing the clause of the constitution under
consideration, says: "This means the common law jury
of twelve men." Denio, J., says: "The fair, and I think,
the necessary construction of that part of the act which
subjects an alleged offender to trial before a court of
special sessions, deprives him of the right of trial by jury."
The learned judge means, he was deprived of the right of
trial by a jury of twelve men, which is the jury contem-
plated by the constitution; otherwise the statement would
be erroneous, as the act does provide for trial by a jury
of six men.

In order to place the views of the court beyond cavil,
the judges stated their conclusions in three distinct proposi-
tions, the third of which is in these words: " 3d. That the
criminal proceeding in a court of special sessions, author-
ized by the said act, is unconstitutional and void, because
the accused is thereby deprived of the right of a trial by
jury guarantied by the constitution."

This case has never been overruled, or even questioned,
and until it is overruled, we must obey it; and this can
only be done, it seems to me, in this case, by declaring
unconstitutional a law that violates not only the spirit but

Knight *v.* Campbell.

the letter of a clause of the constitution more vitally important to the people than any other contained in it.

The cases of *The People* v. *Kennedy,* (2 *Park. Cr. Rep.* 312,) and *The People* v. *Carroll,* (3 *id.* 22,) are directly in point upon the question, and are entitled to consideration in the decision of this question: The position most commonly assumed in opposition to the construction I have given to the clause of the constitution we are considering (and which must be established before the law of 1860, giving jurisdiction to justices' courts over actions of replevin, can be held to be constitutional,) is that the term jury does not mean twelve men, but any number of men the legislature may see fit to designate.

If the legislature may, in its discretion, prescribe any number, it may prescribe three, or two, or even one. Who is to say that one would not satisfy the constitutional requirement? If it is said that the word "jury" implies a number greater than one, then two may be prescribed. Would the right to a trial by jury be worth the paper on which the constitutional provision is written? Never, in the history of this State, or of England, has the legislature attempted to reduce the number of jurors in a court of record below twelve; nor has it ever permitted a verdict to be rendered by less than the whole number, unless upon the express consent of the parties in civil actions.

The people have a marvelous attachment to the trial by jury. They consider it as one of the greatest safeguards to liberty, and cling to it as such. They have been taught that although a jury might be occasionally corrupted, and bring to the examination of questions submitted, a less measure of learning and intelligence than men learned in the law, and might be misled, occasionally, by passion or prejudice, it, upon the whole, was an institution sacred by reason of its antiquity, endeared to them by the patriotic resistance it had frequently made against arbitrary

power, and in protecting the innocent against oppression and injustice.

This popular attachment to the jury as known to the common law ought not to be disregarded in the construction of the provision of the fundamental law designed and understood by the people to secure it to them, not in name only, but in substance.

The only cases in this court in which the constitutional provision under consideration has been considered are *Dawson* v. *Horan*, (51 *Barb.* 459,) and *The People ex rel. Metropolitan Board of Health* v. *Lane*, (6 *Abb. N. S.* 115.) In *Dawson* v. *Horan*, the question was not before the court. The defendant appeared in the justice's court and made no objection to the jurisdiction. The issues were tried by the justice without a jury, and under those circumstances a jury trial was waived. The court, at general term, do not put their decisions upon that ground, but hold that the law which enlarged the jurisdiction of the justices of Rochester, so as to enable them to try cases alone, or with a jury of six men, theretofore triable in a court of record only by a jury of twelve men, was constitutional.

I regret that the learned judge who gave the opinion of this court in that case, did not give his reasons for the conclusion at which he and his brethren arrived. The case, as it is reported, seems to me to be directly in conflict with the case in the Court of Appeals, above cited, and I am therefore constrained to decline to be bound by it. The learned judge does not allude to the case of *Toynbee*. Had he done so, he would doubless have told us wherein the two cases were distinguishable, and why he declined to follow that case.

Although I entertain the highest respect for the learned court that decided the case cited, I cannot yield to it as authority, so long as the case of *Toynbee* stands unreversed by the court that decided it.

In the case of *The People* v. *Lane*, the facts were as fol-

Knight *v.* Campbell.

lows : There were two actions commenced against Lane, who was one of the district justices of New York city. One by the relators against Ranney, a physician, for a penalty of $250; for not making a report of deaths, &c. The other was by the same plaintiff against one Kerr, for penalties amounting to $100, for violation of ordinances relating to tenement houses. On the return day of the summons, Ranney appeared and demanded a trial by jury, and paid the fees required to be paid to entitle him thereto. The further hearing was adjourned, and on the adjourned day he demanded a trial by a jury of twelve men. Kerr, on the joining of the issue, demanded a trial by a jury of twelve men, and as the justice had no power to impannel such a jury, he refused to try the case, and the relators thereupon applied for a mandamus to compel him to proceed and try them. The penalties sued for in the case of Kerr amounted to $100 only. The jurisdiction of the justice's court in the city of New York had been extended prior to 1846, so as to authorize recoveries therein, in actions for penalties, to $100. By the laws regulating those courts, juries of six men only could be impanneled.

Whether, therefore, the law extending the jurisdiction, in actions for penalties to $100, to be tried by a jury of six men, was or was not constitutional, when passed, it became constitutional on the adoption of the constitution of 1846. Trial by jury, as it had theretofore been used, whether under constitutional or unconstitutional laws, was established and was to remain inviolate forever.

In the case of *Ranney* the jurisdiction of the justice was extended, in actions for penalties, to $250, subsequent to the adoption of the constitution of 1846. The learned judge granted the mandamus as to that case, on two grounds: 1st. Because Ranney did not, at the time of joining issue, demand a trial by a jury of twelve men; and, 2d. That as by the statute relating to the justices' courts in the city of New York, the defendant may give

an undertaking that he will pay the plaintiff any judg
ment that may be recovered against him in the court of
common pleas, and remove the trial into that court where
he can have a trial by a common law jury, the constitu-
tional provision is not violated.

I cannot agree with the learned judge in either of the
grounds on which he sustained the law giving jurisdiction
to justices in actions for penalties to the amount of $250.
If, by the constitution, he was entitled to be tried by a
jury of twelve men, we must assume that it was that jury
he demanded. Had he remained silent, and not de-
manded a jury trial at the time of joining issue, he would
have been held to have waived it. And I cannot perceive
that the situation of the parties was changed in the
slightest degree by his omission to specify the number of
persons who should compose the jury.

The second ground for sustaining the constitutionality
of the law under which the justice was acting, is still less
satisfactory than the first. The proposition of the judge
comes to this : That if the defendant will secure to the
plaintiff the payment of any judgment he may recover,
he may have a trial by a jury of twelve men, otherwise
not. In other words, a defendant may have the benefit
of a constitutional provision if he will pay for it. Should
the legislature see fit to authorize justices of the peace to
try and determine actions of ejectment by a jury of six
men, which have always been tried by a common law
jury, would any court sustain the law because it contained
the provision that the defendant might remove the cause
into the Supreme or county court, on giving an undertak-
ing to surrender possession and pay costs if judgment
should pass against him ? It seems to me not.

One of the counsel in the case of *The People* v. *Lane*,
suggests the only ground on which the laws extending
the jurisdiction of inferior courts can be even colorably
sustained ; and this is, to construe the word "cases," in

Knight *v.* Campbell.

the constitution, as equivalent to "forms of action," so that the legislature would be at liberty to extend the jurisdiction to any amount, in the forms of action of which they had jurisdiction at the time of the adoption of the constitution.

From the creation of courts of justices of the peace, they have had jurisdiction in actions of assumpsit, covenant, trespass, and trespass on the case. The amount which could be recovered was, at first, $25, and from time to time increased, until it is now $200. Under the construction suggested, it may be increased to any amount, but it can be extended to no form of action not previously within the jurisdiction of such courts. It is not necessary for me to enter upon an examination of the propriety of such a construction of the constitutional provision, as it does not bear on the question before us.

I entertain no doubt but that the law giving jurisdiction to justices of the peace in actions of replevin, is unconstitutional. I am therefore in favor of reversing the judgments of the county court and of the justice.

One objection to the construction we have given to the constitutional provision is, that it would prevent altogether the legislature from extending the jurisdiction of inferior courts, and would annul all judgments rendered in such courts, in all cases in which the jurisdiction of such courts has been enlarged. The answer to this and all similar objections is, the constitution is the supreme law. The only security for the citizen against legislative, executive or judicial oppression, is in rigidly confining each of these great departments within the limits prescribed by the organic law. If they disregard its provisions, the acts done and proceedings had in violation of it must be annulled, and thereby remove all inducement to violate it.

I am aware that the legislature, under each of the constitutions of the State, has extended the jurisdiction of inferior courts, to cases not within it at the time such con-

stitutions were adopted, without providing, in some cases, a jury of any larger number than had theretofore been authorized by law in such courts, and no objections seem to have been taken in the courts to such legislation. But the legislature was not always forgetful of the constitutional guaranty. In the act passed in 1818, (chapter 94 of the laws of that year,) extending the jurisdiction of justices of the peace to $50, either party might demand a trial by a jury of twelve men, when the sum demanded exceeded $25, and provision was made for such a jury. The same provision is contained in chapter 238 of the laws of 1834. In the city of New York the justices' courts had the same power, and suitors were entitled to the same right. A more unequivocal concession than the extension of the jurisdiction, without the provision for a jury of twelve men, could not be made, and the regret is, that subsequent legislatures did not also yield to the manifest intention of the framers of the constitution, in extending the jurisdiction of inferior courts, and thereby relieve the people from the expense and loss which must be incurred in consequence of their disregarding it.

But the frequent and long continued violation of a plain provision of the constitution cannot alter the language or meaning of the instrument. If the meaning is obscure, or construction doubtful, a long continued acquiescence in a particular construction should be followed, although it might not be the best, or the most satisfactory. But this consideration cannot properly or justly be acted upon when the constitution admits of but one meaning and construction. If the number of violations of a constitutional provision is to prevent the courts from declaring them void, a premium is offered for unconstitutional legislation.

It is the duty of the courts, when called upon to pass upon the validity of acts of the legislature, to take into consideration the fact, if it exists, that similar acts have

Knight *v.* Campbell.

been passed, through a series of years, without objection, and therefore the same construction of the constitution should be adopted and followed.

It is their duty, further, to take into consideration the consequences that will probably result to the citizens by declaring such acts unconstitutional and void. But if, after all these things are considered, the acts are found to be clearly and manifestly in violation of it, they must be annulled, whatever may be the results.

Actions of replevin being triable only by a jury of twelve men, at the time of the adoption of the constitution of 1846, must, by virtue of the provision referred to, continue to be tried by a jury consisting of that number.

It is said that as the power of the legislature to enlarge the jurisdiction of justices of the peace is unlimited, the act of 1860, giving them jurisdiction of actions for the claim and delivery of property, authorized them to issue process and hear and determine all such actions, and this jurisdiction was not lost because they could not impannel a jury of twelve men. The only consequence was that the justice must try by such a jury as the court could impannel. It would follow from this reasoning, that if the jurisdiction had been conferred upon a court that had no power to impannel a jury, and the parties must therefore try without one, of what use is the provision of the constitution which secures the right to a trial by jury in all cases in which it had been theretofore used? Even the shadow of the right would not be left, under such a construction. If when the parties appeared before the justice to try the issue joined in such an action, neither party demand a jury, the justice may proceed and try the issues and render judgment. The neglect to demand a trial by jury is a waiver of the right.

Or, if a jury of twelve men is not demanded, the justice may proceed and try the issue; but if such a jury

is demanded, the power of the justice to proceed in the case is at an end, and the plaintiff must bring his action in a court of record.

The omission of the legislature to provide for a common law jury, for the trial of this class of actions, is fatal to the jurisdiction of the justice to try after demand for the jury to which the parties, by the constitution, are entitled.

The judgment should be reversed.

Judgment affirmed.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, March 5, 1872. *Mullin,* P. J., and *Johnson* and *Talcott,* Justices.]