SYLVESTER L. MALONE, as Administrator of SYLVESTER MALONE, Deceased, Respondent, v. SAINTS PETER and PAUL'S CHURCH, BROOKLYN, E. D.

1. APPEAL — CERTIFIED QUESTION INVOLVING QUESTION NOT CERTIFIED CANNOT BE ANSWERED BY COURT OF APPEALS.   A question certified to the Court of Appeals by the Appellate Division: "Has the court in a suit upon a common-law cause of action, brought by an administrator, jurisdiction to order a reference of all the issues in the action to a referee to hear and determine the same where the administrator opposes the granting of such order and demands a trial by jury?" cannot be answered correctly either in the negative or affirmative where the questions as to whether a trial of the case will necessarily involve the examination and auditing of a long account, or as to whether independent issues are raised by the pleadings, have not been certified; and an appeal from an order of the Appellate Division reversing an order of the Special Term granting a compulsory reference, upon the ground that an administrator being a party he has the constitutional right to demand a jury trial, must be dismissed.

2. COMMON-LAW ACTION BY EXECUTOR OR ADMINISTRATOR — COMPULSORY REFERENCE WHEN EXAMINATION OF LONG ACCOUNT IS INVOLVED.   The constitutional and legislative provisions relating to the question as to whether a compulsory reference may be ordered in a common-law action brought by an executor or administrator reviewed, and *it seems* that if independent issues are raised by the pleadings or issues, the determination of which may render an accounting unnecessary, they should be first tried before a jury, and if upon its determination an accounting is necessary, and it appears that the trial will necessarily involve the examination and auditing of a long account, the plaintiff is not entitled to a jury trial, but the court has power to order a compulsory reference.

*Malone* v. *Saints Peter and Paul's Church,* 69 App. Div. 420, appeal dismissed.

(Argued June 12, 1902; decided October 21, 1902.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered March 11, 1902, which reversed an order of Special Term referring the issues in the action to a referee to hear and determine the same.

The nature of the action, the question certified and the facts, so far as material, are stated in the opinions.

*James M. Gray, Herbert T. Ketcham* and *Joseph E. Owens* for appellant. The distinction between cases where the right to trial by jury existed and was preserved "inviolate forever," and cases where it was not so preserved, is a distinction depending on the nature of the case and not upon its incidents. The Constitution of 1777, construed together with the act of 1768, does not limit the power to order a compulsory reference to those cases which in every detail correspond to the statute, but leaves the legislature free to provide for a reference in all cases of the generic class in which the power to refer was granted by that statute. (*Wynehamer* v. *People,* 13 N. Y. 378.; *Colon* v. *Lisk,* 153 N. Y. 188; *Morris* v. *People,* 1 Park. Cr. Rep. 441; *Plato* v. *People,* 3 Park. Cr. Rep. 586; *Riggs* v. *Shannon,* 27 Abb. [N. C.] 456; *Byers* v. *Commonwealth,* 42 Penn. St. 89; *Stilwell* v. *Kellogg,* 14 Wis. 461; *Mead* v. *Walker,* 17 Wis. 189; *Howe* v. *Treasurer of Plainfeld,* 37 N. J. L. 145; *Commissioners* v. *Seabrook,* 2 Strobh. 560.) If the question certified is answered "no" our whole system of compulsory references in actions at law becomes obnoxious to the fourteenth amendment to the Federal Constitution, and to sections 1 and 6 of article 1 of the Constitution of New York, which embody the principle of equality before the law. (*Hays* v. *Missouri,* 120 U. S. 68; *Bush* v. *Kentucky,* 107 U. S. 110; *Strander* v. *West Virginia,* 100 U. S. 303; *People ex rel.* v. *School Board,* 161 N. Y. 598; *People ex rel.* v. *Gallagher,* 93 N. Y. 438; *People* v. *King,* 110 N. Y. 418; *Barbier* v. *Connolly,* 113 U. S. 27; *G. C. & S. F. R. R. Co.* v. *Ellis,* 165 U. S. 150; *State* v. *Loomis,* 115 Mo. 307; *Missouri* v. *Lewis,* 101 U. S. 22.) The Constitution in force is the Constitution of 1894 and not that of 1777. Hence "heretofore used" refers to 1894 and not to 1777. (*Wynehamer* v. *People,* 13 N. Y. 378; *Riggs* v. *Shannon,* 27 Abb. [N. C.] 456.)

*Laurence E. Malone* for respondent. The question whether an action is referable without consent of both parties is to be determined from the complaint alone. (*Steck* v. *C. F. & I.*

*Co.*, 142 N. Y. 236; *Cassidy* v. *McFarland*, 139 N. Y. 201; *Spence* v. *Simis*, 137 N. Y. 616; *A. R. Mills* v. *Dwyer*, 26 App. Div. 101.) The right of trial in the mode and by the tribunal prescribed by law is a substantial right and plaintiff cannot be deprived of it against his consent. (*Kain* v. *Delano*, 11 Abb. Pr. [N. S.] 29.) The court, in a suit upon a common-law cause of action brought by an administrator, has no jurisdiction to order a reference of all the issues in the action to a referee to hear and determine the same when the administrator opposes the granting of such order and demands a trial by jury. (*Steck* v. *C. F. & I. Co.*, 142 N. Y. 236.) The courts, in construing the Constitution, have nothing to do with the argument *ab inconvenienti*. (*People* v. *Morrell*, 21 Wend. 583; *Newell* v. *People*, 9 N. Y. 83.)

HAIGHT, J. The question certified to this court by the Appellate Division is as follows: " Has the court in a suit upon a common-law cause of action, brought by an administrator, jurisdiction to order a reference of all the issues in the action to a referee to hear and determine the same when the administrator opposes the granting of such order and demands a trial by jury ?" The court in this case ordered a reference upon the ground that the trial would involve the examination of a long account. Did the court have jurisdiction to make such an order ?

In order to answer the question certified, it becomes important to examine the legislation upon the subject. The first law to which attention has been drawn is entitled " An act for the better determination of personal actions depending upon accounts." It was passed December 31st, 1768, and, so far as is material to the question under consideration, provides as follows:

" Whereas, instead of the ancient Action of Account, Suits are of late, for the sake of holding to Bail, and to avoid the Wager of Law, frequently brought in Assumpsit, whereby the Business of unraveling long and intricate Accounts most proper for the deliberate Examination of Auditors, is now

cast upon Jurors, who, at the Bar, are more disadvantageously circumstanced for such Services; and this Burden upon Jurors is greatly increased, since the Law made for permitting Discounts in Support of a Plea of payment; so that by the Change of the Law and practice above mentioned the suits of Merchants and others upon long Accounts are exposed to erroneous Decisions, and Jurors perplexed and rendered more liable to Attaints; and by the vast Time necessarily consumed in such trials other Causes are delayed, and the general Course of Justice is greatly obstructed.

" BE IT THEREFORE ENACTED by his Excellency the Governor, the Council, and the General Assembly, and it is hereby enacted by the Authority of the same, that whenever it shall appear probable in any Cause depending in the Supreme Court of Judicature of this Colony (other than such as shall be brought by or against Executors or Administrators) that the trial of the same will require the Examination of a Long Account, either on one side or the other, the said Court is hereby authorized with or without the Consent of Parties, to refer such Cause by Rule to be made at Discretion to Referees." (4 Colonial Laws, page 1040.)

This act by its own provision was to continue in force until the first day of January, 1771, and no longer. It was, however, revived by the general assembly in February, 1771, and continued in force until the first day of February, 1780. (Laws of N. Y. [Van Schaack ed.] vol. 2, 1691 to 1773, p. 607.) From 1780 to 1788 I do not find that any statute was in force upon the subject; but in that year the legislature, by chapter 46, section 2, provided: "That whenever it shall appear probable in any cause depending in any court of record in this state, *as well where an executor or executors, administrator or administrators, is, are or may be party or parties,* as otherwise that the trial of the same will require the examination of a long account, either on one side or the other, the said court at any time after issue is joined in such cause, is hereby authorized with or without the consent of the parties to refer such cause by rule to be made

at discretion to referees." In the year 1801, by chapter 90, section 2, this statute was re-enacted, and the same provision was carried into the revision of 1813 by chapter 56, section 2. It thus remained until the revision of 1828, when it was changed to read : "Whenever a cause shall be at issue in any court of record, and it shall appear that the trial of the same will require the examination of a long account on either side, such court may, on the application of either party, or without such application, order such a cause to be referred to three impartial and competent persons." (2 R. S. [2d ed.] 305, § 40.) This provision with some slight immaterial change has been carried into our Code of Civil Procedure, and remains the law until the present day. It will be observed that prior to the legislation of 1788 the statute excepted actions by or against executors and administrators ; but that by the laws of that year, actions by or against executors or administrators were expressly included in the provision giving the court the power to order a reference.

The Constitution of 1777 provided that "Trial by jury, in all cases in which it hath heretofore been used in the colony of New York, shall be established and remain inviolate forever." (Article 41.) In the Constitution of 1821 the provision was changed so as to read as follows: "The trial by jury, in all cases in which it has been heretofore used, shall remain inviolate forever." And in this form it was continued in the Constitutions of 1846 and 1894. It is now contended that the act of 1788 authorizing a reference in actions by or against executors or administrators was violative of the Constitution of 1777, for the reason that it deprived the parties of the right of a trial by jury, and that by reason thereof all of the subsequent revisions of that act have been unconstitutional and, therefore, void. This proposition, if sound, is far reaching in its consequences. If one party is entitled to a trial by jury, the same privilege must be accorded to the other party in an action, in order that equality before the law may be maintained. (Const. of U. S. art. 14, § 1.) If either party may object to a reference, it follows that no reference can

18

be ordered except upon the stipulation of all the parties in the action.

It is a matter of common knowledge that reference, in actions of the character of that now before us, has been ordered in a great many cases as far back as the memory of any man now living extends, and I think we may assume that such references have been ordered ever since the passage of the act of 1788. No decision has ever been made adjudging the provisions of that act to be in conflict with the provisions of the Constitution, but, on the contrary, it has been acted under ever since upon the assumption that it was constitutional. The Constitution of 1777 provided that a trial by jury, in all cases in which it has been heretofore *used*, shall remain inviolate forever. What is the meaning of the word " used ? " Does it have reference to a statute existing upon the subject, or to a custom long in use ? The unwritten common law of England was largely made up of customs which had existed for a period " whereof the memory of man runneth not to the contrary." This law was in force in the colony. There was no statute specifying the cases in which parties were entitled to a trial by jury, and the word " used," therefore, must of necessity have referred to the customs then existing. What was the custom at that time ? It is said that it was to try actions by or against executors or administrators involving the examination of long accounts before a jury. I do not understand such to be the fact.

The settlement of the estates of deceased persons from very early times has devolved upon other than common-law courts. Our Surrogate's Court dates back to the act of March 16th, 1778. Before the Revolution, the powers and duties of the surrogate vested in the colonial governor who, by virtue of his office, was judge of the Prerogative Court, or the Court of Probates, as it was sometimes called. When the government of this province was committed to Governor Nicolls, by the Duke of York, there was framed what was afterwards known as " The Duke's Laws." Under these laws the province was divided into three ridings, in each of which

was a Court of Sessions, composed of the justices of the peace residing therein, who held a session twice a year. To this court was committed the probate of wills, the appointment of executors and administrators, and the appointment of guardians ; but if the estate exceeded one hundred pounds, all proceedings upon the probate of wills and all records in cases of administration had to be transmitted to the secretary of the province where they were required to be recorded, and where letters testamentary, of administration, and of the final discharge of executors and administrators, were granted by the governor under seal of the province. In 1686 instructions were transmitted to Governor Dongan, directing him to add to the jurisdiction of the governor, as judge of the Prerogative Court, the ecclesiastical jurisdiction of the archbishop of Canterbury, and three years later there was also added the ecclesiastical jurisdiction of the bishop of London, so far as it related to testamentary matters or the administration of the estates of intestates. Subsequently, when the colony became more extensively settled, the governor appointed deputies in the different localities, to whom were delegated the power to act for him in such cases, and these deputies subsequently became known by the title of surrogates. They took the proof of wills, issued letters of administration, appointed guardians for minors, settled and adjusted accounts of executors and administrators, compelled the payment of debts and decreed the final distribution of estates. This jurisdiction was derived chiefly from the " Duke's Laws " and the added jurisdiction of the ecclesiastical courts.

In 1743 an act was passed, under which persons entitled to a share in the estate of deceased persons were authorized to bring actions against executors and administrators to compel the payment due them of their shares of the estate, and if a plea of want of assets was entered, the court was empowered to appoint auditors to examine the accounts of the executors or administrators and to determine the amounts remaining in their hands. This law continued in force down to the adoption of the Revised Statutes. (Laws of N. Y., Smith and

Livingston [1st ed.], 316; Street's N. Y. Council of Revision, 281.) The provisions of this act and the jurisdiction exercised by the Court of Chancery furnished a more effectual remedy than the Prerogative Court afforded, and the practice of accounting in the Court of Chancery was more generally resorted to, except when an executor or administrator filed his account with a view of obtaining his discharge, the accounting took place before the Prerogative Court.

Disputed claims presented against the estates of deceased persons were ordinarily determined by arbitrators, and this practice, I presume, suggested to the revisers our modern statute providing for an offer of reference of such claims before action brought. But these claims and those made by executors and administrators against other persons, as well as actions by or against guardians, were determinable in the courts, and where they involved the adjusting of long accounts by an action for an accounting.

One of the most ancient forms of action at common law was the action of account. Formerly it lay only in cases where there was either a privity in deed as against a bailiff or receiver, or a privity in law as against a guardian in socage, and so strictly was the privity of contract construed that an action did not lie by or against executors or administrators, but by act of Parliament it was first extended to the executors of a merchant (13 Edw. III, ch. 23), then to executors of executors (25 Edw. III, ch. 5), and then to administrators (31 Edw. III. ch. 11), and finally by 4 Anne, ch. 16, it was extended to executors and administrators, and by the same statute arbitrators were given the power to administer oaths to the witnesses. Subsequently this form of action fell into almost total disuse in England, chiefly for the reason that the Court of Chancery assumed jurisdiction in matters of account, and it was found that that court furnished to parties a more effectual and speedy remedy, and, consequently, it was more frequently resorted to in such cases, but in this country the action for an account, with some modifications, has continued in use until the present time and actions

between copartners and personal representatives of deceased persons against the surviving members of a firm are not uncommon. It was continued as to executors and administrators by the Revised Statutes: "Actions of account and all other actions upon contract, may be maintained by and against executors, in all cases in which the same might have been maintained, by or against their respective testators." The next section includes administrators. (2 R. S. 113, §§ 2, 3.) It is thus apparent ·that cases of this character were maintainable as an action for an account ever since the fourth of Anne, and that that form of action was resorted to, except in cases in which the action was brought in the Court of Chancery. The practice adopted may be briefly stated : If issues were joined raising other questions than the amount due, such issues were tried by the jury and if found against the party raising them the judgment entered was *quod computet.* Thereupon an interlocutory judgment was entered and auditors were appointed to take the account. The history of this form of action and the practice thereunder is so clearly stated by Blackstone that, I think, it should here be repeated: "If no account has been made up, then the legal remedy is by bringing a writ of *account de computo ;* commanding the defendant to render a just account to the plaintiff, or show the court good cause to the contrary. In this action, if the plaintiff succeeds, there are two judgments: the first is that the defendant do account *quod computet* before auditors appointed by the court; and when such account is finished then the second judgment is that the defendant pay the plaintiff so much as he is found in arrear. This action, by the old common law, lay only against the parties themselves and not their executors; because matters of account rested solely on their own knowledge. But this defect, after many fruitless attempts in Parliament, was at last remedied by statute 4 Anne, c. 16, which gives an action of account against executors and administrators. But, however, it is found by experience that the most ready and effectual way to settle these matters of account is by bill in a

court of equity, where a discovery may be had upon the
defendant's oath without relying merely upon the evidence
which the plaintiff may be able to produce." (3 Bl. Com.
164.) In the case of *McMurray* v. *Rawson* (3 Hill, 59, 68)
COWEN, J., says, with reference to this practice and the inde-
pendent issues raised, " if found against the defendant or he
suffer default, the judgment is *quod computet;* but the jury
cannot take the account. The judgment is but interlocutory
and the cause goes to auditors, before whom a new course
of pleading might be taken up at common law." This prac-
tice, except as to the change made in 1788 in which referees
took the place of auditors, appears to have continued until
the Revised Statutes, in which it was continued by the provi-
sion : " When an action of account shall be brought  *  *  *
and judgment shall be rendered that the parties account, or
that the defendant account to the plaintiff, the cause shall be
referred to referees in the same manner, and subject to the
same provisions as herein prescribed in case of a long account."
(2 R. S. [2d ed.] 306, § 50. See, also, *Kelly* v. *Kelly,* 3 Barb.
419, 423 ; 1 Mallory Entr. 67, 68 ; 1 Brownl. Entr. 51, 53 ;
*Baxter* v. *Hozier,* 5 Bing. N. C. 288 ; 1 Bac. Ab. 43, Of
Accounts of Auditors; *Brick's Estate,* 15 Abb. Pr. 12 ; 1
Story's Com. on Equity, §§ 441, 447.)

It is thus apparent that the practice of determining accounts
in this class of cases by auditors was in existence long before
the adoption of the Constitution of 1777 ; and it is quite pos-
sible that this explains the reason for excepting executors and
administrators from the provisions of the act of 1768, it not
then being thought wise to dispense with the auditors. In
1788, however, executors and administrators were placed upon
the same footing as other suitors and the reference to ref-
erees, instead of auditors, was authorized. This statute did
not, therefore, deprive parties of the right to a trial by jury
in cases in which the trial by jury had theretofore been used.

A compulsory reference should not be ordered unless it
clearly appears that the trial will necessarily involve the exami-
nation and auditing of a long account. If it does so appear

a reference should be ordered. It is not possible for jurors to carry in mind numerous items composing a long account, and determine intelligently the amount that should be awarded to either party. This difficulty was recognized in the preamble of the act of 1768, and it has been confirmed by experience. If independent issues are raised by the pleadings or issues the determination of which may render an accounting unnecessary, they should first be tried in the proper forum, if in a common-law case before a jury, and if, upon their determination an accounting is necessary, it should be referred to a referee or referees to determine the same.

The question as to whether the trial of this case will necessarily involve the examination and auditing of a long account, or as to whether independent issues are raised by the pleadings, have not been certified to us. The question, as certified, cannot be answered correctly either in the negative or affirmative, for the reason that issues may be raised in a pleading which are independent of those involving the examination of a long account.

Under the provisions of the Code we are limited in our review to the questions certified, and without deciding the questions not certified we cannot determine whether the order should be affirmed or reversed. Under the circumstances, therefore, the appeal should be dismissed, the costs to abide the final result of the action.

VANN, J. (dissenting). This action was brought to recover the sum of $994.50, being the unpaid portion of the annual salary of the plaintiff's intestate as priest of the defendant, a religious corporation, as well as upon an account for moneys lent, paid out and expended. The answer, after putting at issue substantially all the allegations of the complaint, sets forth a counterclaim for moneys had and received. Upon defendant's motion an order was made at Special Term referring all the issues to a referee to hear and determine the same, upon the ground that a long account was involved. The plaintiff, as administrator, opposed the motion for a reference,

demanded a trial by jury and appealed from the order to the Appellate Division, where it was reversed upon the ground that a compulsory reference cannot be had in a common-law action when an executor or administrator is a party, because the Constitution gives the right of trial by jury in such cases. The Appellate Division, however, certified the following question to this court : " Has the court in a suit upon a common-law cause of action, brought by an administrator, jurisdiction to order a reference of all the issues in the action to a referee to hear and determine the same when the administrator opposes the granting of such order and demands a trial by jury ? "

In order to thoroughly understand the nature and extent of this question it is necessary to read it in connection with the pleadings. (*Baxter* v. *McDonnell*, 154 N. Y. 432.) When thus read the question means, can such issues as are joined by the pleadings in this action be referred when the plaintiff, a sole administrator, opposes the application and demands a trial by jury ? If the liability of the defendant was established or conceded and the only issue was the amount of the recovery, a question would be presented that I shall not discuss, because it is not before us. The issues referred by the order of the Special Term involved the liability of the defendant to the plaintiff for the unpaid salary as well as upon an account and also the liability of the plaintiff to the defendant upon the cause of action alleged in the counterclaim.

The present Constitution of this state provides that " The trial by jury, in all cases in which it has been heretofore used shall remain inviolate forever." (Art. I, § 2.) The provision in the Constitution of 1846 was precisely the same. The language of the Constitution of 1777 was as follows : " Trial by jury, in all cases in which it hath heretofore been used in the colony of New York, shall be established and remain inviolate forever." (Art. 41.)

At the time our first Constitution was adopted, the following statute was in force, it having been first enacted in 1768

for a limited period, and in 1771 revived and extended until February 1st, 1780 : " WHEREAS instead of the antient Action of Account, Suits are of late, for the sake of holding to Bail, and to avoid the Wager of Law, frequently brought in Assumpsit, whereby the Business of unraveling long and intricate Accounts, most proper for the deliberate Examination of Auditors, is now cast upon Jurors, who, at the Bar, are more disadvantageously circumstanced for such Services ; and this Burden upon Jurors is greatly increased, since the Law made for permitting Discounts in Support of a Plea of payment; so that by the Change of the Law and practice above mentioned the Suits of Merchants and others upon long Accounts are exposed to erroneous Decisions, and Jurors perplexed and rendered more liable to Attaints; and by the vast Time necessarily consumed in such Trials other Causes are delayed, and the general Course of Justice is greatly obstructed.

" BE IT THEREFORE ENACTED, etc., that whenever it shall appear probable in any Cause depending in the Supreme Court of Judicature of this Colony (*other than such as shall be brought by or against Executors or Administrators*) that the trial of the same will require the Examination of a Long Account, either on one side or the other, the said Court is hereby authorized with or without the Consent of Parties, to refer such Cause by Rule to be made at Discretion, to Referees, * * * ." (2 Van Schaack's Laws of New York, ch. 1363 ; Id. ch. 1478 ; 4 Colonial Laws, p. 1040 ; 5 id. 195.) In 1772 this statute was extended to all the common-law courts of the colony, and in 1788 it was revived by the legislature of the state, but the exception as to executors and administrators was omitted, and it was expressly enacted that the act should apply to such parties, *eo nomine*. (5 Colonial Laws, p. 293, L. 1788, ch. 46.)

According to section 1013 of the Code of Civil Procedure, the right to refer an action involving the examination of a long account is general and there is no exception as to executors or administrators. The Revised Statutes contained

a similar provision. (3 R. S. [6th ed.] 520.) For a more specific history of legislation upon the subject and an able discussion of the power to refer, reference is made to the opinion of Judge Earl in *Steck* v. *Colorado F. & I. Co.* (142 N. Y. 236), which is relied upon by the respondent as controlling.

It is argued in behalf of the appellant that the word " cases," as used in the section of the Constitution relating to trials by jury, means classes of cases and not particular instances; that being used in a generic and not in a specific sense, it relates to the nature of the case, not to its incidents, and hence whenever the nature of an action is such that it cannot well be tried before a jury, the legislature has power to authorize the courts to refer.

This is an enticing argument, which, if adopted by us, would lead to a result not only convenient in this and similar cases but in accord with the practical construction of the legislature for a long period of years. I find great difficulty, however, in yielding to it. The first Constitution established trial by jury " in all cases in which it hath heretofore been used in the colony of New York," and as it had always been used in actions at law when an executor or administrator was a party, with one unimportant exception, the intention of the framers to continue that rule seems clear and conclusive. In the colony, as we have held, there was no authority to refer actions at law except the ancient and virtually obsolete action of account, to be noticed hereafter, unless as authorized by the act of 1768. (*Steck* v. *Colorado F. & I. Co.*, 142 N. Y. 236.) As early as 1683 it was provided by the Charter of Liberties and Privileges granted by the Duke of York to the inhabitants of New York " that all trials shall be by the verdict of twelve men." (Charter, Appendix No. 2, 2 Laws of 1813; 1 Colonial Laws, p. 111.) We further held in the *Steck* case that the act of 1768 was virtually a part of the Constitution of 1777, so far as the power to refer actions at law is concerned. This is apparent not only from the prevailing opinion, but is emphasized by the following quotation from the

dissenting opinion : " The act of 1768 excepted from its oper-
ation suits ' brought by or against executors or administra-
tors.' This exception was expressly abrogated in the act of
1788 and the subsequent statutes of the state. But this abro-
gation of the exception was inoperative and in violation of
the Constitution, if you say that no compulsory reference can
be authorized in any case not referable under the colonial
laws, although the case is within the principle and policy
upon which these laws were based. If the Constitution
restricts, as is claimed, the power of compulsory reference to
the exact cases specified in the colonial act of 1768, then I
perceive no escape from the conclusion that whenever now
an executor or administrator is a party to an action, it cannot
be compulsorily referred, although the action may be on con-
tract and involves a long account on either or both sides."
(Id. p. 259.)

When the Constitution of 1777 was framed, as the history
of that period shows, the right of trial by jury was regarded
as of supreme importance, and the framers provided that, as
theretofore used, it should remain inviolate forever. The
only measure of usage was the universal rule that all actions
at law should be tried before a jury, except the antiquated
and worn-out action of account, even then seldom resorted to,
and the act of 1768. That act contained the only relaxation
of the general rule, and it expressly excepted from its opera-
tion the representatives of dead men who could not protect
themselves. The language of the Constitution shows an
unmistakable intention to establish in the state the rule
previously existing in the colony, and that rule did not per-
mit the reference of such actions. Unless the act of 1768
was virtually embodied in the Constitution, as we held in the
*Steck* case, there was no authority to refer any action at law
whatever, except that " most difficult, dilatory and expensive
action," known as the technical action of account, which
could be brought only against bailiffs, receivers and guardians
in socage and at last against merchants. Judge BRONSON,
writing sixty years ago, said that only two actions of that

kind had ever been brought during the history of the state, and that no more than a dozen such had been brought in England during the two centuries then preceding. (*McMurray* v. *Rawson*, 3 Hill, 59, 62.) The rule of the colony was to try every common-law action, except the action of account, before a jury until the change was made in 1768. Until then it was unimportant whether the action involved the examination of a long account or not, for it could not be tried before auditors or referees except by the consent of the parties, although a computation of the amount due could be made by a referee, after the liability had been established. Whether the trial was long, inconvenient and expensive, or whether the action was of such a nature that a jury could not do justice to the parties, still it could not be referred without consent until the statute, which does not affect executors or administrators, changed the rule. The right to a trial by jury, as used in the colony when the Constitution of 1777 was adopted, applied to all actions at law brought by or against executors or administrators. It was only because the act of 1768 was virtually a part of the Constitution that there was authority to refer any action at law, with the unimportant exception of the disused action of account. If it was a part of our first Constitution, the express exception as to executors and administrators still exists, for it goes without saying that the provision of that instrument relating to the subject has continued with the same meaning and almost in the same words in every Constitution adopted since. I think that one of the most important and permanent sections of the fundamental law of the state and one deemed more important when it was first adopted in 1777 even than at the present time, should not be given a loose or strained construction in order to meet an emergency or promote convenience, nor bent so as to yield to usage however venerable. "No encouragement should be given to the belief, now widely prevalent, that if an unconstitutional law can be acted upon long enough to make it a hardship to declare it void, the courts will not interfere." The maxim *ita lex scripta est* should control, and the words of the Constitu-

tion should not be departed from, but a direct, simple and exact construction given, regardless of custom or convenience.

The order appealed from should be affirmed, with costs, and the question certified answered in the negative.

PARKER, Ch. J., GRAY, CULLEN and WERNER, JJ., concur with HAIGHT, J.; O'BRIEN, J., concurs with VANN, J.

Appeal dismissed.