THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* VINCENT SICILIANO, Defendant.

County Court, Queens County, December 10, 1952.

*T. Vincent Quinn, District Attorney (Benjamin Jacobson* of counsel), for plaintiff.

*Joseph Lonardo* for defendant.

FARRELL, J. Defendant moves to set aside a judgment under which he has previously been convicted of robbery first degree, grand larceny first degree, and assault second degree, upon the ground that his said conviction was procured by perjured testimony, knowingly employed by the District Attorney as part of a scheme and contrivance to bring it about. The alleged perjury is said to have been committed by a witness who was originally indicted for the crime himself, but who thereafter testified

before the Grand Jury with the result that a superseding indictment was found, naming this defendant as one of the robbers but not charging the witness himself, with the commission of the crime. After the finding of the indictment against this defendant, the indictment against the said witness was dismissed and he thereafter testified against the moving defendant in the trial which resulted in the latter's conviction. The assistant district attorney, against whom the charge of connivance at perjury is leveled, has since died. In the course of the hearing conducted upon a prior motion to set aside the judgment, it was developed that the same assistant district attorney was then critically ill, but a former County Judge declined to continue the matter until the said assistant's deposition could be taken. Thereafter, the assistant district attorney in question recovered sufficiently to return to his duties, and was available for a considerable period of time, during which appropriate relief might have been sought and the said assistant's testimony might have been taken. However that may be, the present motion alleges grounds sufficient for relief, if proven and not conclusively shown by the opposing papers to be false. If laches can be a defense, that defense itself would require a trial (*People* v. *Richetti,* 302 N. Y. 290, 294, 298). A hearing and trial of the issues should, therefore, be had.

The defendant further moves for a jury trial of the factual issues arising upon this motion. His contention is that the motion is in the nature of error *coram nobis;* that there was a right to a jury trial of factual issues arising on the ancient writ at common law, and that such right has been preserved by the various Constitutions of this State.

It seems clear that there was a right to trial by jury of an issue of fact raised by the common-law writ of error *coram nobis.* (*Jaques* v. *Cesar,* 2 Saund. 100 [Note]; 2 Tidd on Practice [1st Am. ed.] 1122; *Arnold* v. *Sandford,* 14 Johns. 417, 423.)

The early view in New York was that our practice followed the English system, so far as not here altered or modified (*Schuyler* v. *Yates,* 11 Wend. 186; *Fleet* v. *Youngs,* 11 Wend. 522, 525) and that we had " lost the name of the writ but nothing more." (*Smith* v. *Kingsley,* 19 Wend. 620, 622.)

Upon the eventual abolition of its American counterpart in civil practice, the method of securing the relief formerly obtainable by the writ of error in fact came to be by way of motion to set aside the judgment (*McMurray* v. *McMurray,* 60 Barb. 117, 122, 125, affd. 66 N. Y. 175, 177), but the broad power of review remained. (*Thurber* v. *Townsend,* 22 N. Y. 517, 518-519·

cf., also, *Matter of Tilden,* 98 N. Y. 434, 443–444, and *Byrnes* v. *Byrnes,* 109 App. Div. 535.) In criminal cases, the statute abolishing the former writ of error (Code Crim. Pro., § 515) was regarded as having supplanted former rights of review " so far as those rights are subject to statutory control." (*People ex rel. Hummel* v. *Reardon,* 186 N. Y. 164, 168), and is now deemed to have established the practice in all criminal cases " within the field where the Legislature may grant authority to a court or withhold it." (*People* v. *Gersewitz,* 294 N. Y. 163, 167.) And, though a court's inherent power to vacate its judgment may neither be abolished nor curtailed by the Legislature, the procedures to be followed in the exercise of that power are regulated by the code and the Constitution. If these sources do not supply authority for a jury trial, it is not to be permitted (*People ex rel. Hirschberg* v. *Orange Co. Court,* 271 N. Y. 151, 157–158). Conversely, the Legislature may not abolish the right to a jury trial if the Constitution secures it.

The early New York authorities on the subject involve decisions subsequent to the adoption in 1777 of our first State Constitution, and do not assume to address the question whether the former practice of trial by a jury in error *coram nobis* became crystallized into constitutional right. So far as can be determined, that question has not yet been decided in this State.

By article XLI of that first Constitution, it was ordained: " that trial by jury, in all cases *in which it hath heretofore been used in the colony of New York,* shall be established and remain inviolate forever " (emphasis supplied).

By article XXXV of the same Constitution, it was further provided: " that such parts of the common law of England, and of the statute law of England and Great Britain, and of the acts of the legislature of the colony of New York, as together did form the law of the said colony on the 19th day of April, in the year of our Lord, one thousand seven hundred and seventy-five, shall be and continue the law of this State ".

The guarantee of the right to trial by jury " in all cases in which it has been heretofore used " is reiterated in the State Constitutions of 1821, 1846 and 1894 though expressed in different verbiage in the Constitution of 1938.

The question to which the language of the earlier Constitution gives rise was considered in *Malone* v. *Saints Peter & Paul's Church* (172 N. Y. 269, 274) where the court observed: " The Constitution of 1777 provided that a trial by jury, in all cases in which it has heretofore been *used,* shall remain inviolate

forever. What is the meaning of the word ' used '? Does it have reference to a statute existing upon the subject, or to a custom long in use? The unwritten common law of England was largely made up of customs which had existed for a period ' whereof the mind of man runneth not to the contrary.' This law was in force in the colony. There was no statute specifying the cases in which parties were entitled to a trial by jury, and the word ' used ', therefore, must of necessity have referred to the customs then existing. What was the custom at that time? ''

Consistently with the suggestion of the *Malone* case, it may be agreed that legal " practice " may be established by statute, even though, by coincidence, occasions never arise for actual *use* of procedures thereby created. But nothing has been found in the colonial laws prior to the adoption of that first Constitution which may fairly be regarded as creating or confirming the right here contended for. There are many instances of treatment of various aspects of trial by jury and of treatment of procedures, including review of judgment, but they leave only an awareness that there were limited rights of review. They do not warrant a conclusion that a jury trial of issues raised by *coram nobis* was made a " practice " in the administration of justice under the colonial laws. The next inquiry then must be as to " What was the custom at that time? ''

A people's " customs " are such practices and usages as exist, not just in memory, but actively, in guidance of or at least influence upon their current pursuits. In the common law itself, founded as it was on a collection of maxims and customs " of higher antiquity than memory or history can reach, * * * the goodness of a custom depends upon its having been *used* time out of mind "; so too, its doctrines depend upon " immemorial *usage* ", while the authority of its maxims " rests entirely upon general acceptance and *usage*; and the only method of proving that this or that maxim is a rule of common law, is by showing that it hath been always the custom to observe it." (1 Blackstone's Comm. [Cooley 4th ed.], pp. 67–68; emphasis supplied.) The coincidence — between the usage upon which the common law was built and upon which the constitutional preservation of a right to trial by jury was based — is striking. It seems quite apparent that what the constitutional framers sought to preserve were fundamental and familiar rights which had been exercised customarily in the Colony. Conspicuous among them, the rights of prosecution by indictment and of trial by jury, had been contended for from the Colony's infancy. ("Charter of

Liberties ", 1 Colonial Laws of New York 113 *et seq.*, disallowed by the Duke, 3 Documents Relating to Colonial History of New York 357; repudiated by him as sovereign id., 370; re-enacted upon the accession of William and Mary, chapter 10, Laws of 1691, 1 Colonial Laws of New York 246–247; said to have been repealed by the Crown in 1697, cf. Fowler's Bradford p. CXI Note; Report of Board of Trade, 4 Documents Relating to Colonial History of New York 263.)

The refusal of grand and petit juries to knuckle under to the Crown had been met with the creation of Admiralty Courts and prosecution by information. The contest saw an unyielding judge removed and counsel summarily disbarred for challenging the authority of an arbitrary court. It saw too a petit jury defeat an attempt by Crown officers to stifle freedom of the press. The history of the Colony emphasizes that the rights sought to be preserved by the Constitution were those for which a conflict of arms had been waged and won — and in the forefront of those rights was the basic right to trial by jury, of factual issues, upon the determination of which personal and property rights depended. Nowhere has there been found any such *custom, long in use in the Colony,* as would invite a fair conclusion that the constitutional architects had any such refinement as trial by jury in *coram nobis* in mind, and intended to incorporate it into the legal structure of the new State. Indeed, we are informed by a distinguished authority that the writ was "hoary with age and even obsolete in England before the time of Blackstone," and that by his day it had fallen so completely into desuetude as not even to have merited his notice (FULD, J. "The Writ of Error Coram Nobis ", N. Y. L. J., June 5, 1947, p. 2212, col. 1). In America, before the Revolution, Blackstone's work is said to have been read more than any other law book. (*C. J. Hendry Co.* v. *Moore,* 318 U. S. 133, 151.)

No controlling authority has been found which suggests otherwise. The constitutional language is clear and the courts have given it effect. The test of usage has been applied consistently to deny the right of trial by a "common law jury " of twelve, in cases where it had not been used prior to the adoption of the Constitution. (*Malone* v. *Saints Peter & Paul's Church,* 172 N. Y. 269, 274, *supra; People ex rel. Murray* v. *Justices,* 74 N. Y. 406, 407–408; *Sheppard* v. *Steele,* 43 N. Y. 52, 57; *People ex rel. Witherbee* v. *Supervisors,* 70 N. Y. 228, 234–235; *Batzel* v. *Batzel,* 54 How. Prac. 139, 142–144; *Matter of Smith,* 10 Wend. 449, 457; *Murphy* v. *People,* 2 Cow. 815, 816–817 and note, 819–820;

*Knight* v. *Campbell,* 62 Barb. 16, 25–27; *People ex rel. Metropolitan Bd. of Health* v. *Lane,* 55 Barb. 168, 171, 173.) It has been applied just as consistently to sustain the right where it had either been in previous " general usage " (*Colon* v. *Lisk,* 13 App. Div. 195, 206, affd. 153 N. Y. 188, 193–194, and authorities there cited; *People* v. *Kennedy,* 2 Parker Cr. Rep. 312*; *Duffy* v. *People,* 6 Hill 75, 78) or had come into existence prior to the adoption of a later Constitution couched in substantially the same language. (*Moot* v. *Moot,* 214 N. Y. 204, 207–209; *Wynehamer* v. *People,* 13 N. Y. 378, 426–427; *Batzel* v. *Batzel, supra*; *People* v. *Berberrich,* 11 How. Prac. 289, 336, 338.) It has also been applied to sustain the right where the case was of a *class* formerly tried by common-law jury, and a denial of the right would, in effect, sanction a circumvention of the constitutional safeguard. (*Wynehamer* v. *People, supra*; *People* v. *Kennedy, supra,* p. 318; *Wood* v. *City of Brooklyn,* 14 Barb. 425, 433; *Warren* v. *People,* 3 Parker Cr. Rep. 544, 550.) Naturally, these are only some of numerous authorities, cited because they present the consensus of opinion.

There seems to be that about the resurrection of the ancient writ of error *coram nobis* which has prompted many to abandon restraint in utterance of their opinions on the subject. So here a brief lapse from that same virtue may be permissible in connection with whatever views may prevail elsewhere as to the right of trial by jury in error *coram nobis.* Our first Constitution made usage *within the Colony of New York* the criterion. I find myself in complete sympathy with the view of the scholarly author who is of the thought that " where the common law reception statute or constitutional article makes specific reference to the state of the law in the Colony, this calls for an inquiry into the facts, which, once established, can be argued as a once applicable rule of law. Such inquiry is not concluded by forays into the pantries of other provinces. The Judge who would accept in lieu of a documented statement of Colonial practice in his own jurisdiction the mince of the institutional historians or the fragile meringues of social historians, does the law no service." (Goebel and Naughton, " Law Enforcement in Colonial New York ", Introduction, XXXVI.)

Neither the research of counsel nor that of the court has unearthed a documented *instance* of trial by jury, of the factual issues arising from error *coram nobis* within the Colony or State

---

* Cf. p. 317, " The obvious meaning  *  *  *  is, in 'use at the time of the adoption of the Constitution '."

of New York, either prior or subsequent to the adoption of the Constitution of 1777. In *Arnold* v. *Sandford* (*supra*) *the rectitude of the practice* was asserted, but an examination of the original records of the case fails to show that there ever actually was trial by jury of the issues arising on the writ of error *coram nobis,* and in any case no question of constitutional right to the jury trial was involved.

In the absence of a reasonably clear statutory practice, or of a demonstrated " custom long in use " in the Colony or infant State, my conclusion is that there is no constitutional right to a jury trial of factual issues in proceedings which are a modern counterpart of the ancient writ. The remarks of the Court of Appeals in recent opinions indicate an accord with this conclusion, though, of course, not necessarily with the reasoning by which it is reached. (*People* v. *Richetti,* 302 N. Y. 290, 298; *People* v. *Langan,* 303 N. Y. 474, 480.)

Insofar as the moving party prays for an order directing that a hearing be had and that testimony and proof be taken thereon before the court, the said motion is granted. In all other respects, the motion is denied. Settle order on notice.