In the Matter of IRVING GURLAND, an Alleged Mentally Ill Person. SADIE GURLAND, Respondent; NATHAN BECKENSTEIN, as Director of the Brooklyn State Hospital, Appellant.

Second Department, November 28, 1955.

*Jacob K. Javits, Attorney-General (Isadore Siegel, James O. Moore, Jr.,* and *Abe Wagman* of counsel), for appellant.

*Herbert L. Levy* for respondent.

MURPHY, J. Respondent is the wife of a patient in the Brooklyn State Hospital committed pursuant to an order of the Supreme Court adjudging him to be a mentally ill person. That order was made on August 26, 1955, upon the petition of a deputy medical superintendent of Kings County Hospital and the certification of two examiners that the patient was in need of care and treatment. The order provided that the patient be confined to the hospital for "observation" for a period not exceeding sixty days and that upon the filing of a certificate in the office of the County Clerk prior to the expiration of that period by the director or the physician in charge or the designated medical officer of the institution that the patient was in need of "continued care and treatment," the foregoing order of August 26, 1955, "shall then become final."

Upon application of the respondent and prior to the expiration of the sixty-day observation period, another order was made by the Supreme Court, on September 19, 1955, directing a jury trial of the issue of the mental illness of the patient. It is from that order that the Director of the Brooklyn State Hospital appeals, urging that under the provisions of section 76 of the Mental Hygiene Law said application for a jury trial was premature in view of the fact that it was made before the order of August 26, 1955, had become "final". The respondent contends that to deny to her a jury trial of her husband's mental illness even before the time when the order of August 26, 1955, became "final" would be an abridgement of her constitutional rights.

We must look to the provisions of the Mental Hygiene Law for our answers to the question before us. There is no doubt that the court followed the correct procedure in certifying the patient to the Brooklyn State Hospital for observation. That procedure is set forth in section 74 of the Mental Hygiene Law, which, among other things, provides that the original commitment order "shall become a final order" in the event that a designated medical authority files a certificate in the office of the County Clerk at any time prior to the expiration of the sixty-day period that the patient is in need of "continued care and treatment". If such a certificate is filed, the patient remains in the institution, or any other institution to which he may be transferred, until his discharge in accordance with the provisions of the Mental Hygiene Law.

It is obvious that the Legislature intended to have the order providing for the sixty-day observation period considered as

a temporary order, which would not become final except under circumstances stated above.

Section 76 of the Mental Hygiene Law provides that a jury trial will be available to the patient, or any friend or relative in his behalf, after the order of commitment and observation becomes a final order. Thus a jury trial of the patient's mental illness is not denied to the respondent; it is merely suspended until an intelligent medical determination can be made of the patient's condition, but not to exceed sixty days. Hence, the respondent's application for a jury trial was premature.

Parenthetically and significantly, of course, it should be observed that at any time after the order of commitment for observation was made, even within the sixty-day period, the respondent had the right to a writ of habeas corpus and thereby to receive a hearing before a court of competent jurisdiction, reviewing all the proceedings regarding the patient's detention for treatment as a person mentally ill (Mental Hygiene Law, § 204). This is a safeguard against an improper detention of a mentally ill person and may be availed of by a patient detained in custody upon allegedly inadequate or improper findings, or by some relative or friend in his behalf.

Proceedings under the Mental Hygiene Law do not have the effect of determining that the person is incompetent to manage his affairs or his property. (*Finch* v. *Goldstein,* 245 N. Y. 300; *Hoff* v. *State of New York,* 279 N. Y. 490; see, also, 1944 Report of N. Y. Law Revision Commission, p. 565.) Such a determination is made pursuant to the provisions of the Civil Practice Act upon an application for the appointment of a committee for the alleged incompetent. (Civ. Prac. Act, arts. 81, 81-A.)

Respondent asserts that a reversal of the order directing a jury trial of the issue of her husband's mental illness would be violative of section 2 of article I of the State Constitution, which provides that " Trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever ". All prior Constitutions had provided that trial by jury as has been heretofore " used " shall remain inviolate. (4 Lincoln on Constitutional History of New York [1926 ed.], pp. 38, 39; *Malone* v. *Saints Peter & Paul's Church,* 172 N. Y. 269, 273.) " ' The measure of the right of trial by jury preserved by the State Constitution (Art. I, section 2) * * * is the right to a jury trial in such cases as it existed at the time of the adoption of the Constitution of 1846,' (*Moot* v. *Moot,* 214 N. Y. 204, 207.) " (*Blum* v. *Fresh*

*Grown Preserve Corp.,* 292 N. Y. 241, 244.) The use prior to 1846 within the purview of the constitutional provision was one which had accrued by custom as part of the common law as distinguished from statute (*Malone* v. *Saints Peter & Paul's Church, supra,* p. 274; *People* v. *Cosmo,* 205 N. Y. 91, 99) and as a matter of right rather than as a privilege (*Sheppard* v. *Steele,* 43 N. Y. 52, 57; *Colon* v. *Lisk,* 13 App. Div. 195, 203, affd. 153 N. Y. 188). There was no such use of jury trials of mental illness prior to 1846 so as thereafter to immure a right to trial by jury within the constitutional provision. The chancellor molded the procedure and when he accorded a jury trial it was not as of right but "in order to inform his conscience". (*Sporza* v. *German Sav. Bank,* 192 N. Y. 8, 15–17.)

As WILLARD BARTLETT, J., pointed out in his opinion, concurring in the result, in the *Sporza* case (*supra,* p. 34): "From no point of view can the privilege of a jury trial upon an appeal from an order of commitment under the Insanity Law be regarded as the equivalent of the right of trial by jury guaranteed by the Constitution."

The order should be reversed on the law, without costs, and the application should be denied.

NOLAN, P. J., WENZEL, BELDOCK and UGHETTA, JJ., concur.

Order directing a jury trial of the issue of the mental illness of an alleged mentally ill person reversed on the law, without costs, and application denied.