J. Iewin Shapibo, J.
The defendants, husband and wife, have been indicted for criminally receiving (5 counts) and criminally concealing stolen property (5 additional counts).
They now move “ for an order to suppress evidence and to strike from the record and from the minutes of the Grand Jury evidence seized in violation of the defendants’ constitutional rights and for an order dismissing the indictment.”
*158 In support of their motion defendants contend that they lived together at 116-25 140th Street, South Ozone Park, in Queens County; that they never gave any policeman or law-enforcement officer permission to enter their house to search it or to seize any articles of personal property therein contained.
The defendant Frank Du Bois says that he was not at home at the time of the search, but was under arrest having been “ taken into custody by four men, two of whom were the detectives that I just mentioned and two of whom I believe were agents of the Federal Bureau of Investigation. ’ ’
His wife the defendant Diane Du Bois, in her affidavit states: ‘1 The facts upon which I base this application are as follows: On March 21st, 1961, I was in my home at 116-25 140th Street, South Ozone Park, Queens County. At the time I was ill and I was actually being attended by my doctor, Eugene Raicus, of 95 Eastern Parkway, Brooklyn. At about 10:30 p.m., I heard my bell ring and I heard a pounding on my door and being busy with the doctor I did not open it immediately. Suddenly I heard a crash and the door was broken in and five men came into my house, after forcing the door open. These five men, I found out later, were police officers and included Detective Andreoli, of the Queens Burglary Squad. I asked them what they wanted and they said: ‘ You know why we are here.’ I asked them if they had a search warrant to come into my house and they told me they did not need a search warrant. They were armed and they forced the doctor and myself to sit down and they methodically searched my house. They even discharged a rifle into the wall of the house, for what reason I do not know. They came into my house by force and arms, against my will and without my consent and they seized articles of personal property which I believe this indictment is based on. They even forced the doctor to accompany them to the police station where he properly identified himself and was released.
‘ ‘ I have been informed by my attorney that such search and seizure by the police is unconstitutional and violates my constitutional rights and a similar search and seizure by State officers was struck down recently by the United States Supreme Court. I ask this Court to suppress the evidence seized and to strike it from the minutes of the Grand Jury. I also ask this Court to dismiss this indictment because it is founded upon what I allege to be an illegal search and seizure.”
In opposition to the motion six police officers joining in one affidavit assert6 ‘ That the entry into the home of the defendants and the search thereof was with the express consent of each of the defendants; that the entry into said home of the defendants *159 and the search thereof was accomplished lawfully; and that the assertations in the affidavits of the defendants to the contrary are completely false and untrue ’ ’.
'They further “specifically deny that they pounded on the door of defendants’ home; that they forced open said door of defendants’ home; that they broke into defendants’ home in any manner whatsoever; that defendant Diane DuBois asked them whether they had a search warrant; that they displayed any arms whatsoever; that they made a search of defendants’ home without the consent of defendant Diane DuBois
The factual issues thus raised by the conflicting versions contained in the moving and opposing affidavits cannot be summarily determined upon the papers submitted. The taking of testimony is, therefore, required for a proper determination of the issues.
The time and method of the resolution of those issues are problems created by the recent determination of the United States Supreme Court in Mapp v. Ohio (367 U. S. 643). The court there extended the Federal rule of exclusion to State courts and ruled that evidence obtained by an illegal search or seizure could not be received as evidence in any court in the land; that the Fourth Amendment of the United States Constitution was applicable to and enforeible against the States by virtue of the due process clause of the Fourteenth Amendment.
The Fourth Amendment to the United States Constitution provides: ‘ ‘ The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath, or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”
Since 1938 there has been a comparable New York constitutional provision (art. I, § 12) but it has not been held to be a bar to the receipt of evidence obtained through an illegal search or seizure and therefore it was held by the New York courts that the rule of exclusion of such evidence, obtaining in the Federal courts, did not apply to New York State, because the Fourth Amendment of the United States Constitution was not applicable to the States. (People v. Adams, 176 N. Y. 351, 357, 358, affd. 192 U. S. 585; People v. Defore, 242 N. Y. 13, 19-25; People v. Richter’s Jewelers, 291 N. Y. 161, 166-170.) Prior to the decision in Mapp v. Ohio (supra), the United States Supreme Court had been of the same opinion and it, therefore, refused to outlaw convictions in State courts concededly bottomed upon illegal searches and seizures. (Wolf v. Colorado, 338 U. S. 25.)
*160 In Mapp, however, the ma jority opinion held that ‘ ‘ all evidence obtained by searches and seizures in violation of the Constitution is * * * inadmissible in a state court ” (p. 655).
It thus is obvious that the courts in this State must now reject evidence obtained as a result of illegal search and seizure, if offered during the trial. The question therefore arises, because of the void in our Code of Criminal Procedure, whether the issues of fact arising upon an application for suppression of such evidence are to be determined by the court or the jury, and upon a motion such as that now pressed in this case, there is the additional question whether the court has the power to consider and pass upon the propriety of suppressing such evidence prior to the trial.
In the Federal jurisdiction, the issues of fact arising on an application to suppress are determined by the court. Subdivision (e) of rule 41 of the Federal Rules of Criminal Procedure provides that: “ A person aggrieved by an unlawful search and seizure may move * * * for the return of the property and to suppress for use as evidence anything so obtained * * *. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial * * #. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing.”
That rule merely formalizes the procedure followed in the Federal courts before its adoption (Weeks v. United States, 232 U. S. 383, 388, 398 [1914]; Silverthorne Lbr. Co. v. United States, 251 U. S. 385, 392 [1920]; United States v. Di Re, 159 F. 2d 818, 820, affd. 332 U. S. 581 [1948]; Jones v. United States, 362 U. S. 257, 264 [1960]; Segurola v. United States, 275 U. S. 106, 111-112). Its twofold purpose is to enforce the protection afforded by the Fourth Amendment and to provide well-ordered trial procedure. It is necessarily grounded on the proposition that the right to trial by jury (U. S. Const., art. Ill, § 2; 6th Arndt.) is not impinged by placing it within the province of the court to consider and determine the issue of fact arising on a suppression application as an incidental question ‘ ‘ which has happened to cross the path of such litigation and which is wholly independent of it.” (Segurola v. United States, supra, p 112.) There would appear to be no constitutional obstacle to the pursuit of the same procedure in New York.
*161 Section 2 of article I of the New York Constitution preserves the right of trial by jury “ in all cases in which it has heretofore been guaranteed by constitutional provision Thus, the test of the right is whether the cause or the issue was triable by jury prior to the taking effect of the applicable article of the respective and successive State Constitutions (Blum v. Fresh Grown Preserve Corp., 292 N. Y. 241, 244; Matter of Gurland, 286 App. Div. 704, 706-707; Matter of Leary, 175 Misc. 254, 256, affd. 260 App. Div. 1000, affd. 285 N. Y. 693; People v. Siciliano, 203 Misc. 441 and authorities there collected; Matter of Britton, 187 Misc. 70, 74) including, of course, cases to which the right has since been extended. Since no such motion to suppress by reason of an illegal search and seizure has heretofore been recognized as an available right in this State it follows as a matter of course that a trial by jury of that issue could not have been “ guaranteed by constitutional provision ’ The court has neither been cited to nor does it know of any authoritative utterance opposed to the Federal view that a factual dispute as to the legality of the search and seizure is to be tried by the court, and not by the jury (Steele v. United States, 267 U. S. 505, 510, 511; Ford v. United States, 273 U. S. 593, 605; Federal Rules of Criminal Procedure, supra, rule 41, subd. [e]) since the issue is regarded as “not immediately relevant to the question of guilt ” (Jones v. United States, supra, p. 264). A jury should not be called upon to focus its attention upon such a purely collateral issue and thereby chance having it lose sight of and being diverted from its purpose for being — the determination of the guilt or innocence of the defendant.
In People v. Siciliano (supra), this court denied the right to trial by jury of the factual issues raised upon a motion in the nature of coram nobis and that determination is consistent with the test — applied in the Federal jurisdiction — of immediate relevance to the question of guilt. I hold, therefore, that the issues of fact presented by the instant motion may be tried and decided by the court.
Left for decision, therefore, is the question whether a hearing should be conducted in advance of the trial. The determination of that question depends upon whether in the absence of a statutory grant of power so to do, the court may, before trial, order that illegally obtained evidence be suppressed. I hold that it may. The absence of any procedural statutory authorization as to how and in what manner evidence illegally obtained shall be suppressed does not overbear the obligation of the court to safeguard the constitutional rights of one accused *162 through the use of such evidence. (People v. Petrea, 92 N. Y. 128, 144; People v. Sabatino, 29 Misc 2d 886.)
In Matter of Both (200 App. Div. 423, 424) the court said: “ The court has inherent power to order the return to the owner of books, papers or other articles illegally seized or detained by a magistrate or other public officer charged with the administration of the criminal law. (People v. Kinney, 185 N. Y. Supp. 645; United States v. Mills, 185 Fed. Rep. 318; United States v. Kraus, 270 id. 578; Weeks v. United States, 232 U. S. 383, 398; Newberry v. Carpenter, 107 Mich. 567.) ”
The power thus exercised by the court may be likened to the power to set aside indictments found without evidence or upon illegal evidence. In such cases although the Code of Criminal Procedure covers the manner and mode in which an indictment may be attacked, where the accused’s constitutional rights have been invaded by an indictment, the limitations of the code are not all encompassing, for “ our Courts have also always asserted and exercised the power to set aside indictments whenever it has been made to appear that they have been found without evidence, or upon illegal and incompetent testimony. (U. S. v. Coolidge, 2 Gall. 364; People v. Restenblatt, 1 Abb. Pr. 268; People v. Briggs, 60 How. Pr. 17.) This power is based upon the inherent right and duty of the courts to protect the citizen in his constitutional prerogatives and to prevent oppression or persecution. It is a power which the legislature can neither curtail nor abolish, and, to the exent that legislative enactments are designed to effect either of these ends, they are unconstitutional."(People v. Glen, 173 N. Y. 395, 400.)
If, therefore, “ it clearly appears * * * that illegal evidence is the sole basis for an indictment, the person indicted has a constitutional right to make a motion to dismiss ” (People v. Sexton, 187 N. Y. 495, 511-512) and the court, in the exercise of its inherent power to do so, may direct that the indictment be set aside. In a proper case that power may be, and frequently is, exercised well in advance of the trial.
By a parity of reasoning, if the indictment in this case is bottomed upon the introduction of evidence obtained by an illegal search or seizure the Grand Jury had no right to consider it and this court in the exercise of a sound discretion should not postpone its exercise of the power to suppress such illegally obtained evidence, and the concomitant dismissal of the indictment necessitated thereby, until the time of trial. Not only does justice to a defendant demand the earliest possible determination of the question, but expedition of criminal litigation would also seem to require such a course. If the determination of the *163 question of illegal search and seizure is withheld for determination at the trial, it would necessitate a jury being held in recess or confined possibly for a long and extended period while the court took testimony on and determined that issue. The trial of cases would thereby be unduly prolonged to the detriment of the proper administration of the criminal law. It would, therefore, seem to be better to assimilate our practice to that employed in the Federal courts and have the question determined in advance of trial.
The motion is, therefore, granted to the extent of directing that a hearing be had at the time and place set forth in the short-form order entered upon this determination, at which time the court will receive the evidence of the parties upon the questions of fact involved and the determination of the balance of the motion is held in abeyance in the interim.
Without making any definitive determination of the question at this time attention is directed to the fact that in the Federal courts the burden of proof to establish that the evidence in question was obtained by an unlawful search and seizure is upon the defendant (Nardone v. United States, 308 U. S. 338; White v. United States, 194 F. 2d 215; Wilson v. United States, 218 F. 2d 754; United States v. Lustig, 163 F. 2d 85; United States v. Lipshitz, 132 F. Supp. 519) by reason of the presumption indulged in that the arresting officers had performed their duty in a proper and legal manner (United States v. Warrington, 17 F. R. D. 25 [U. S. District Ct., Cal. 1955]).
One further word on the subject under review may not be amiss. It is quite likely that other courts may not agree with the conclusion here reached as to the desirable method of procedure. Different procedural approaches to this problem by different courts may well keep the law on the subject in a state of uncertainty for a considerable period of time and until it is finally settled on appeal. Such a chaotic condition in the administration of the criminal law is highly undesirable, and it is, therefore, respectfully suggested that the Legislature fill the existing procedural void by appropriate legislation at the very earliest opportunity.